THE PEOPLE ex rel. THE BUFFALO AND STATE LINE RAILROAD COMPANY, Appellants, v. PETER BARKER et al., Assessors of the Town of Evans, and EDMUND Z. SOUTHWICK, Supervisor, Respondents.

SAME APPELLANTS v. PETER FREDERICKS et al., Assessors of the Town of Hamburgh, and GEORGE PIERCE, Supervisor, Respondents.

Since the act of 1851 (Laws of 1851, chap. 176), assessors are not bound by the affidavit presented by an owner of property taxed, upon complaint in relation to the assessment thereof. The affidavit is no longer conclusive, but is evidence to be considered by them, with other means of information in their power, and upon the whole their own judgment is to be formed as to the value of the property.

In assessing the real estate of a railroad corporation, assessors are not required to assess it as an isolated piece of land, but each piece of property is to be estimated in connection with its position, its incidents, and the business and profits to be derived therefrom.

The real estate of railroad corporations, occupied and used by them for railroad purposes, cannot properly be assessed as "non-resident lands."

The provisions of the Revised Statutes for the assessment of taxes upon incorporated companies (1 R. S., 414, et seq.) furnish a sufficient basis for

the assessment and taxation of the lands of railroad corporations, in those towns and counties remote from its principal place of business.

The assessors in those towns are not required to make the entries upon their roll required for the purpose of fixing a basis of a tax upon the capital of the corporation. (Sub. 1 and 2, § 6, 1 R. S., 415.) Those directions are appropriate to the assessors of the town or ward where the principal place of business is located, upon whom the duty of assessing the capital is devolved. Where the duty is not devolved the directions are not applicable. *Held* also, that within the provisions of the laws for the assessment and collection of taxes, railroad corporations are residents of the towns through which the railroad passes.

(Argued May 17, 1871 ; decided September term, 1871.)

THESE are appeals by the relator from judgments of the General Term of the Supreme Court, in the eighth judicial district, affirming the assessment made against the relator by the respondents, as assessors in the towns of Evans and Hamburgh, in the county of Erie.

The questions arising on these appeals in the two actions are the same. The original proceeding was upon returns made to a certiorari issued in each action.

The relator is a body corporate and politic, organized and doing business in this State under the general railroad act of the State. The railroad it constructed and operates extends from the first ward in the city of Buffalo, along the southern shore of Lake Erie, to the line forming the boundary between the States of New York and Pennsylvania. The track is located and built through the towns of Evans and Hamburgh, in this State. The assessors of each of these towns, in 1866, placed the lands belonging to the relator on the assessment rolls of their respective towns for the year 1866, with a valuation, for the purpose of taxation. The amount of land belonging to the relator in the town of Hamburgh is stated, on the assessment roll of that town, to be $82\frac{78}{100}$ acres, and the valuation is put at $265,000. On the 21st day of August, 1866, the relator appeared before the assessors, by its vice-president, who was examined by the assessors as to the value of the real estate thus entered on their roll, including the superstructure and fixtures thereon, consisting of " ties, chairs, rails, spikes, frogs

and switches." This estimate included nothing for grading the road, laying the rails, for cattle-guards, culverts, bridges, or the materials included in them, nor was any estimate given of the value of the fences thereon. The testimony thus taken stated the entire value of the land and superstructure and fixtures as not exceeding $68,667.70. The assessors reduced the valuation $40,000, leaving it to stand on the rolls at $225,000.

In the town of Evans the assessors entered on their roll for the year 1866, the relator's land at $92\frac{22}{100}$ acres, with a valuation of $160,000. On the 21st day of August, 1866, the relator appeared before the assessors, by its vice-president, who was examined by them, under oath, relative to the value of the real estate entered upon the roll, including the superstructure, which embraces "the ties, chairs, rails, spikes, frogs and switches." The value, as made by him, was $70,880.40. The assessors, on the 25th day of August, 1866, reduced the valuation $10,000, leaving it $150,000 upon the rolls.

The relator afterward sued out the writs in these proceedings, and the assessors and supervisors made their return. By the return it appeared that the assessors imposed the tax upon the relator as for resident lands, and not as for non-resident lands.

The General Term dismissed the writs as to the assessors, on the ground that their duty was ended before the writs were served, but retained it as to the supervisor, and affirmed the proceedings of the assessors. The relator appeals to the Court of Appeals.

*John Ganson* for appellants. Assessors are bound to take and pass upon the evidence, and must be governed by the ordinary rules governing judicial officers. They cannot act arbitrarily or capriciously. (Laws of 1851, 176; *People* v. *Reddy*, 43 Barb., 539, 544; *People* v. *Assessors of Albany*, 40 N. Y., 55.) The principle of the assessors' valuation was wrong. (*A. and S. R. Co.* v. *Osburn*, 12 Barb., 223; *Oswego Starch Factory* v. *Dolloway*, 21 N. Y., 449; *People* v. *Board*

*of Assessors*, 39 id., 81.)   The court has the power to correct this assessment. (*People* v. *Board of Assessors*, 39 N. Y., 81 ; *People* v. *Assessors of Albany*, 40 id., 155.)   The relator's lands should have been taxed as non-resident lands.   (1 R. S., 389, §§ 1, 2, 3 ; *N. Y. and H. R. R. Co.* v. *Lyon*, 16 Barb., 651–5 ; *Whitney* v. *Thomas*, 23 N. Y., 281, 285.)   The town or ward where the chief office of a corporation is, is its place of residence.   (*Connell* v. *N. P. Ins. Co.*, 10 How., 403 ; *Hubbard* v. *Same*, 11 id., 149.)   Where lands are non-resident lands, the collector is not authorized to levy upon personal property. (*N. Y. and H. R. R. Co.* v. *Lyon*, 16 Barb., 651 ; *Whitney* v. *Thomas*, 23 N. Y., 281.)

*P. G. Parker* for respondents.   A railroad company is a resident of the several towns through which its road extends, within the meaning of the tax laws. (*Sherwood* v. *Saratoga R. R. Co.*, 15 Barb., 650 ; *The People* v. *Pierce*, 31 id., 138 ; *Belden* v. *N. Y. and Harlem R. R. Co.*, 15 How., 17.)

HUNT, C.   Two principal points are urged by the appellants' counsel, upon which it is insisted that the judgments in question should be reversed.   These are: 1. That the assessors adopted an erroneous principle in ascertaining the value of the relator's lands within their district; 2. That the assessment should have been made as for non-resident lands, and not against the relator personally as for resident lands.   These points are elaborated into several branches, and I will consider such of them as seem to be important.

In the town of Hamburgh the real estate of the relator was assessed at $225,000.   The vice-president of the road gave evidence tending to show that it was worth only $68,667 ; and it is insisted that his evidence was controlling, and that a judgment should have been given in accordance with it. Again, it is insisted that the value of the land and its superstructure simply, without reference to its connections at either end, or its general profit, should determine the amount of the assessment.

A reference to the statutory provisions on the subject of the assessment and taxation of real estate is necessary to a proper understanding of this subject.

It is provided, in general terms, that "all lands and all personal estate within this State, whether owned by individuals or corporations, shall be liable to taxation, subject to the exemptions hereafter specified." (1 R. S., 387, § 1.) The exemptions do not relate to anything here in question. "Every person shall be assessed in the town or ward where he resides when the assessment is made, for all lands then owned by him within such town or ward, and occupied by him, or wholly unoccupied." (Id., 389, § 1.) "The real estate of all incorporated companies liable to taxation shall be assessed in the town or ward in which the same shall lie, in the same manner as the real estate of individuals." (Id., § 6.) These statutes are intended to provide that all real and personal estate within this State, with a few exceptions not necessary to be considered, shall be liable to taxation.

As to the manner in which the assessment shall be made, many directions are given. It is provided that "all real and personal estate shall be estimated by the assessors at its just and full value, as they would appraise the same in payment of a just debt due from a solvent debtor." (Id. 393, § 17, Laws 1851, ch. 176.) This rule is to be followed in all assessments, "except where the assessors shall be specifically required, by law, to observe a different rule." (Id.) A provision is made for the re-examination of those cases where a party deems himself aggrieved by the assessment, to wit, "they shall hear and examine all complaints in relation to such assessment as shall be brought before them." (Laws 1851, *supra.*) These complaints are to be determined in accordance "with section 15 of title 2." The original section fifteen here referred to, with sixteen and seventeen, and the amendments of the same by the act of 1851, are important to be understood. Section fifteen, as it originally stood, enacted that any person whose real and personal estate was taxed, might present an affidavit to the assessors to the effect that the real

or personal estate owned by him did not exceed in value a certain sum to be named, and it was made the duty of the assessors to assess the same at the sum named and no more. (Rev. Stat. as amended.)   Section sixteen contained the same authority as to trustees.   In section seventeen it was declared that all real and personal estate, the value of which shall not have been so specified by affidavit, shall be estimated at its full value, as the assessors would appraise the same in payment of a just debt due from a solvent debtor.   (Id.)   Under this statute it was the evident duty of the assessors to value the property at the sum specified in the affidavit, although their own judgment may have been entirely different, or although they may have been satisfied that the statements were dishonestly made.   A different rule was established by the act of 1851 (chapter 176, page 332). It was there enacted that the sections 15, 16, 22, 23, 24, 25 and 26 should be repealed, and that section 17 should be amended so as to read as follows:   " All real and personal estate liable to taxation shall be estimated and assessed by the assessors at its full and true value, as they would appraise the same in payment of a just debt due from a solvent debtor." The other sections declared to be repealed with the substitutes, are equally significant.   By section twenty-two, thus repealed, it was declared that at their meeting for review, if a person had not previously made an affidavit, he might then make it, and the assessors should reduce the assessment to the sum specified in the affidavits.   Section twenty-three authorized the proof to be made by other means than the affidavit of the party.   Section twenty-six gave the form of the certificate to be made by the assessors, to the effect that they had assessed the real estate according to their best information, and that, with the exception of those cases in which the value had been sworn to by the owner, they had estimated the value at the sum at which they would appraise the same in payment of a just debt due from a solvent debtor.   A similar statement was contained in it in respect to personal estate.   This was all changed by the law of 1851.   The certificate then stated that they had set down all the real estate according to their best

information, and that, with the exception of those cases in which the value had been changed by reason of the proof produced, they had estimated the value at the sum at which they would appraise the same in payment of a just debt due from a solvent debtor.

Assessors are citizens chosen from their respective towns, who, in theory of law and in fact, have personal knowledge of the value of the real estate in their towns. In the first instance they form their own judgment of the value of each piece of real estate and place it in the third column of their assessment roll. This judgment they form from the best information in their power, derived from their own knowledge and experience, and from such communications as they may confide in. According to the system in force before 1851, this judgment gave way, absolutely, to the affidavit of the owner. His statement of value was conclusive, and it was the duty of the assessors to adopt it, whatever their own judgment might be. According to the law of 1851 this affidavit was evidence before them, and to be considered by them with the other means of information in their power, and, upon the whole, their own judgment was to be formed of the value. If this proof or any other evidence before them " changed the value of the real estate," they accepted such change and gave the statement. If it changed it to the extent claimed by the owner, or if only to a modified extent, the value was stated accordingly. It was the evident intention of the legislature to abolish the rule that the affidavit of the owner should be conclusive evidence of value. There is no rule left except the judgment of the assessors upon the whole case, the affidavit included. The statute of 1858 (chapter 536, page 122) adopted and confirmed the rule of the statute of 1851 in this respect. After the examination is taken and after hearing such further evidence as may be given, " they shall fix the value at such sum as they may deem just under the rule prescribed by section twenty of this title." The only rule prescribed in the title is the amended one, which I have already cited from the statute of 1851. I am quite satisfied,

therefore, that the assessors acted legally in deciding upon their own judgment, not giving full credit to the opinions or statements contained in the examination of the relator's vice-president, if their judgments were not convinced thereby.

Nor do I see any error in the principle said to have been adopted in determining the value of the land in question. In Hamburgh the land amounted to $82\frac{78}{100}$ acres. It was a narrow strip of a few rods in width, with the buildings, stations, etc., necessary for the accommodation of a railroad. The argument of the relator's counsel is that this should be assessed as an isolated piece of land, having in substance no beginning or end; that is, not connected with anything at either end beyond the limits of the town. A railroad through the town of Hamburgh only, having no connection at either end, would be of no value. The erections and superstructure would destroy its value for farming purposes. As a railroad it would have no passengers and no business, and would be worthless. The attempt to use it as such would involve debt and embarrassment, but no profit. In like manner, the portion of the Erie canal passing through a single town, with no outlet at either end, would be valueless. A mill-race disconnected from the mill would be of no value. The mill severed from its race would be of little value. A block of stores, walled off from all neighboring connections, or deprived of the value resulting from adjoining business and commerce, would be of little value. Each item of property, however, with its connections and accompaniments, and used for the purpose and in the manner intended, might be of great value. Each piece of property is to be estimated in connection with its position, and the business and profit to be derived therefrom. The road in question is part of a whole, and is to be valued as such. This is independent of the taxation of the capital. It is an estimate of the value of the real estate for railroad purposes, as a mill is to be estimated for its value for milling purposes, and not at its value for a church or a banking-house. The capital of the railroad is ascertained and taxed at the place where its principal place of business is situ-

ated.    That is not in Hamburgh nor in Evans, so far as the papers show, and whether the capital is $100,000 or $1,000,000 should not affect the present assessment, and, so far as the case shows, did not affect it.

The law seems to be reasonably certain upon this branch of the case.    In the first general point of the appellant and its branches, I find nothing to justify a reversal of the judgment.

The appellant objects again that the lands in question are not assessed according to the forms prescribed by the statute. They are assessed to the relator personally, while it is insisted that they come properly under the head of "non-resident lands," and should have been so assessed.    It is idle to deny that the proper mode of assessing these lands is involved in much doubt.    This arises from the fact that when the tax laws of this State were passed, railroad corporations were unknown to us.    No such institutions then existed in the State, and the laws respecting the assessment and taxation of real and personal estate reach them only, and quite awkwardly, through the laws respecting incorporations generally.

It is provided in general terms that the real estate of all incorporated companies liable to taxation shall be assessed in the town or ward in which the same shall lie in the same manner as the real estate of individuals.    (1 R. S., 389, § 6.) As to individuals, the following provisions are made, on the same page : 1. "Every person shall be assessed in the town or ward where he resides when the assessment is made for all lands then owned by him within such town or ward, and occupied by him or wholly unoccupied."    This section authorizes the assessment of lands to an individual, with the following limitations : 1. The lands must lie in the same town or ward in which the owner resides :  2. They must be occupied by him ; or, 3. They must be wholly unoccupied.    The lands in question, I think, are occupied by the relator, and it was the opinion of the General Term of the eighth district, in this case, that the relator might fairly be said to reside in every town through which its road passed.    If so, the case falls

evidently within the section quoted. If otherwise, then as evidently they cannot be assessed under that section.

The next section of the statute provides, that "lands occupied by a person other than the owner may be assessed to the owner or occupant, or as non-resident lands." As the lands in Hamburgh and Evans were not occupied by a person other than the owner, this section does not meet the case.

The third section enacts, that "unoccupied lands, not owned by a person residing in the town or ward where the same are situated, shall be denominated 'lands of non-residents,' and shall be assessed as hereinafter provided." Land cannot be deemed unoccupied that is fenced in, having a structure which is daily and hourly used for the passage of men and cars, having on it houses and buildings in which men eat and drink and sleep and spend their days. Lands that are unoccupied are the only lands that are to be denominated lands of non-residents, and assessed as such. The lands in question do not come under this provision. It is not easy to find the power of assessing these lands under any of the statutes which I have quoted, unless the company shall be deemed a resident of every town in which it owns lands.

The regulations for the assessment of taxes on incorporated companies are found in a subsequent part of the statutes. (1 R. S., 414.) It is there provided, that "all moneyed or stock corporations, deriving an income from their capital or otherwise, shall be liable to taxation on their capital in the manner hereinafter prescribed." (§ 1.) The second section is as follows: "The president * * * or other proper officer of every such incorporated company shall, on or before the first day of July in each year, make and deliver to the assessors, or one of them, of the town or ward in which such company is liable to be taxed according to the provisions of the sixth section of the second title of this chapter, a statement specifying, 1. The real estate, if any, owned by such company, the towns or wards in which the same is situated, and the sums actually paid therefor; 2. The capital stock actually paid in, or secured to be paid in, excepting therefrom the sums paid for real estate,

and the amount of such capital stock held by the State or by any incorporated literary or charitable institution; and, 3. The town or ward in which the principal office or place of transacting the financial business of such company is situated, or, if there be no such principal office, the town or ward in which its operations are carried on, or in which it is liable to be taxed under the provisions of this chapter."

Section 6 then provides, that " the assessors shall enter all incorporated companies from which statements shall have been received by them, and the property of such companies, and the property of all other incorporated companies, liable to taxation, in their respective towns, in the following manner: 1. They shall insert in the first column of their assessment rolls the name of each incorporated company in their respective towns or wards liable to taxation on its capital or otherwise, and under its name they shall specify the amount of its capital stock paid in and secured to be paid in, the amount paid by such company for real estate then belonging to such company, wherever the same may be situated, the amount of all surplus profits or reserved funds exceeding ten per cent of their capital, after deducting therefrom the said amount of said real estate, and the amount of its stock, if any, belonging to the State or to any literary or charitable institution; 2. In the second column they shall enter the quantity of real estate owned by said company and situated within their town or ward; and in the third column the actual value thereof, estimated as in other cases; 3. In the fourth column they shall enter the amount of the capital stock of every incorporated company paid in and secured to be paid in, and of all surplus profits or reserved funds as aforesaid, after deducting the sums paid out for all the real estate of the said company, wherever the same may be situated and then belonging to it, and the amount of stock, if any, belonging to the State and to incorporated literary and charitable institutions."   By section fifteen the amount of taxes assessed on all incorporated companies liable to taxation shall be set down by the board of supervisors in the fifth column of the corrected assessment

roll, and shall form a part of the moneys to be collected by the collector.

It is further provided that the collector shall demand the tax of the proper officer; if not paid, shall endeavor to collect the same, and if unsuccessful shall return an affidavit thereof to the county treasurer, who shall certify the same to the comptroller, who shall pass the same to the credit of the county treasurer "as in the cases of taxes on the lands of non-residents." (§§ 17–21.)

The provisions of this title are intended primarily to furnish the means and the rule of assessing the capital stock of incorporated companies, where such capital is assessable, and at the place where its chief place of business is situated. They also furnish, I think, a sufficient basis for assessment and taxation of the lands of a railroad company in those towns and counties remote from its principal place of business. The following, among other reasons, suggest themselves: 1. It is the evident intention of the statute that the real estate of all persons and corporations, wherever situated, shall be subject to taxation. Thus it is expressly enacted that "all lands and all personal estate within this State, whether owned by individuals or corporations, shall be liable to taxation, subject to the exemptions hereinafter specified." (1 R. S., 388, § 1.) And again: "The real estate of all incorporated companies liable to taxation shall be assessed in the town or ward in which the same shall lie, in the same manner as the real estate of individuals." (Id., 389, § 6.) In my reading of the statutes there is no other place than in this title, in which provision is made for the taxation of lands owned by a railroad company, occupied by them but located in a town or ward of which they are not residents, or where their principal place of business is not located. The declaration is express that such lands shall be taxed, and in the towns where situated. For the past thirty years, and within the knowledge of every legislature, they have been so taxed by the towns. If there is, then, to be found, in this statute, language which justifies this action of the assessors, although not intended primarily for that pur-

pose, and although not so explicit in its terms as if it had been primarily so intended, it should be deemed to express the intention of the legislature, and the action of the assessors should be sustained.

2. That the provisions of the statute regulating the assessment of incorporated companies justifies the action we are considering, may be inferred from the language of the second section (p. 414, § 2). The president is there directed to deliver the statement above described "to the assessors of the town or ward in which such company is liable to be taxed, according to the provisions of the sixth section of the second title of this chapter." Here is a declaration that the company is liable to be taxed according to the provisions of section six. Upon turning to that section we find this definition of such liability:

"§ 6. The real estate of all incorporated companies liable to taxation shall be assessed in the town or ward in which the same shall be, in the same manner as the real estate of individuals." * * * (p. 389.)

It is conceded that the relator is an incorporated company, liable to taxation, and we have in this sixth section a declaration that its real estate shall be assessed in the town or ward in which the same shall lie. The assessors of Hamburgh and Evans, finding portions of its real estate in their respective towns, have acted upon this authority, and included the same in their assessment rolls.

3. The action of the assessors, directed to be taken upon the receipt of the statement already referred to (p. 415), has a bearing upon the question before us. By section 6 they are directed to enter in their assessment rolls all incorporated companies from which statements shall be received, "and the property of such company liable to taxation in their respective towns, in the following manner." This language includes all their property, the capital not only, but the real estate; the real estate in the town of its residence or place of business not only, but the real estate wherever situated. It is also to be entered by the assessors in their respective towns, and in

their assessment rolls, thus indicating the several towns and several rolls where lands may be, rather than one roll and one town where its capital is to be taxed.

4. The assessors are directed to insert in the first column the name of each incorporated company in their town or ward liable to taxation on its capital or otherwise. (Id.) If in such town the company is liable to taxation on its capital, its name is to be entered. If it is not then liable to taxation on its capital, but is liable to taxation for any other cause, " or otherwise," it is to be so entered. In the town of Hamburgh, the relator, if not liable to taxation on its capital, was liable to taxation for another cause, to wit: the owner-ship of real estate in the town, and its name was therefore properly entered.

5. The assessors in question perhaps had not the means nor was it their duty to enter the amount of the relator's capital stock, with the deductions pointed out by this statute. They had no power to make the basis of a tax on its capital, and a statement or assessment of its capital was not necessary, perhaps not possible. The entries required by subdivisions 1 and 3 were, therefore, not attempted to be made. Subdivision 2 required the entry in the roll of the quantity of real estate of the company situate within the town, and of its actual value estimated as in other cases. While this duty would be exercised by the assessors who also assessed the capital stock, the language is pertinent and appropriate to an assessment of real estate only. The directions are appropriate to those assessors upon whom a duty is devolved. Where the duty is not devolved upon certain assessors, to them such portions of the directions are not applicable.

I prefer, to base my judgment in the case upon the theory, that a reasonable construction of the statutes regulating the taxation of incorporated companies, embraces the case before us, to holding that the relator is a resident of any town through which its road passes. On that proposition I express no opinion.

Upon the whole case, I am of the opinion that the action

of the assessors of the towns of Hamburgh and Evans was jus-
tified by law, and that the judgments below should be affirmed
with costs.

All concur.

LOTT, Ch. C., LEONARD, GRAY and EARL, CC., also for
affirmance on the ground that railroad corporations are resi-
dents of each town or ward where they own real estate,
within the provisions of the tax laws.