* THE PEOPLE OF THE STATE OF NEW YORK ᴇx ʀᴇʟ. THE NEW YORK ELEVATED RAILROAD COMPANY, Aᴘᴘᴇʟʟᴀɴᴛ, v. THE COMMISSIONERS OF TAXES AND ASSESSMENTS OF THE CITY OF NEW YORK, Rᴇsᴘᴏɴᴅᴇɴᴛs.

*Elevated railroads — foundations and superstructures in streets — taxable as real estate — Valuation, how determined — Form of assessment — Exemption from taxation — what does not operate as — 1868, chap. 855.*

Foundations for piers or columns placed in a public street, by an elevated railroad, by legislative authority, whether standing alone, or with columns and a superstructure thereon, are properly taxable as real estate.

The charter of the relator, chapter 855, of 1868, provided for the payment by it to the comptroller of the city of New York, of five per . cent of its net income to be expended in removing obstructions from the streets through which it ran, and in repairing and improving the appearance thereof; such payment to be "the legal compensation in full for the use and occupancy of the streets by said railway as provided by law, and shall constitute an agreement in the nature of a contract between said city and constructing company, entitling the latter or its successors to the privileges and rates of fare heretofore or hereinafter legalized, which shall not be changed without the mutual consent of the parties hereto as aforesaid." The money received was not to be mingled with the general corporate funds, but was to be expended by commissioners for the aforesaid purposes, subject only to the approval of the mayor.

Held, that this provision did not operate to exempt from taxation the real or personal property of the company.

That in assessing such foundations and superstructures the assessors were not confined to the consideration of the land covered thereby, but might consider their position and its incidents, and the business and profits to be derived therefrom.

Presumption, in absence of proof to the contrary that property is assessed in the form prescribed by the statute, and the power of the court to correct certain irregularities in the assessment, considered.

Aᴘᴘᴇᴀʟ from a judgment entered herein, so far as it relates to the assessment laid upon the relator's foundation and superstructure. The judgment was rendered on the return to a *certiorari*, issued to review the action of the tax commissioners in assessing the relator for real and personal estate. The relator had acquired

---

* Decided at General Term, May, 1879.

title by proceedings in foreclosure, and under the rapid transit act (chap. 606 of 1875), to the property and franchises of the West Side and Yonkers Patent Railway Company, incorporated by chapter 489 of 1867.   The foundations, columns and superstructure of the relator's road, in New York, were assessed as real estate, for $1,504,500, and their personal property was assessed at $150,000.

The relator claimed that the manner in which the assessment was made was not according to law ; that their foundations, columns and superstructure were not real estate, and that they were especially exempt from taxation by force of chapter 855 of 1868.

The following opinion was delivered at the Special Term :

BARRETT, J. :

First. With respect to the foundations and superstructure the case is directly within the principle of *People ex rel. D. and F. Railroad Co.* v. *Cassity* (46 N. Y., 46), and *The People ex rel. Erie R. R. Co.*, v. *Beardsley* (52 Barb., 105).

The track of a railway company was there held to be taxable as 'land' under the statutory definition of that term, (1 R. S., 387, §§ 1, 2.)

It matters not that the easement is unaccompanied by the fee, nor even that the fee is vested in the taxing authority. (Same cases.)

So far as this question is concerned, there is no distinction in principle between elevated and surface railways.   One is as much within the statutory phrase, '*all buildings and other articles* erected upon or affixed to the land,' as the other.   The columns of the elevated railway are 'articles' erected upon and affixed to the land ; so is the road-bed which rests upon the columns.   The depot houses (and stairways leading and attached thereto) are 'buildings.'   True, they do not rest directly upon the surface, but they are 'erected' *thereon* and 'affixed' *thereto*, in that particular differing only in degree from houses built upon spiles or other made foundation.

But even if such an elevated structure should be treated as in the nature of a bridge, that is a continuous railroad bridge, it is still taxable as real estate.   (*The Hudson River Bridge Co.* v. *Patterson*, Court of Appeals, 74 N. Y., 365.)

·462    PEOPLE ex rel. N. Y. E. R. R. CO. v. COM'RS.

First Department, December Term, 1879.

Second. As to the foundations standing alone, they are clearly within the general common law rule as to fixtures. (*Walker* v. *Sherman*, 20 Wend., 655; *Bishop* v. *Bishop*, 11 N. Y., 123; *Snedeker* v. *Warring*, 12 id., 170.)

In the case last cited a statue which was not even fastened to the base on which it rested, and which could have been removed without fracture, was treated as between mortgagor and mortgagee as part of the realty.

It is urged, however, that as the foundations do not rise above the surface, they are not within the statute. The only authority to which we have been referred in support of this proposition is *The People ex rel. Citizens' Gas-light Co.* v. *The Board of Assessors* (39 N. Y., 81). It was there held that the mains of a gas company, *under the streets of the city*, cannot be regarded as real estate within the statute for the purposes of taxation. But there is a plain distinction between pipes which are to remain permanently under ground, and the open foundation of an above ground structure. In the one case, the 'article' runs in and through, in the other it rests upon the earth. The land does not end at the surface. Affixing a thing to the bottom of an artificial depression of a few feet is as much an affixing to the land as though it had been placed upon the original surface. And upon what do these foundations rest if not upon the land? And to what are they affixed?

Further, they are to form part of the contemplated structure. The latter will rest primarily upon its foundation, yet in its entirety, *foundation and all*, it will clearly be 'erected upon' and 'affixed to' the land. It would seem as though the part should be treated as having the same characteristics as the whole.

Third. The next consideration is, whether the relator has by special statute been exempted from taxation upon its real estate. Such exemption is claimed under chapter 855 of the Laws of 1868. The *second* section of that act provides for the payment by the company to the comptroller, of 'five per cent of its net income for the purpose of being expended in the improvements of the condition or appearance of the streets or parts of streets or avenues, or places through which said railway shall be constructed, by preserving or transplanting shade trees, or by other embellishments

or improvements of awnings and sidewalk structures, which may tend to render the general condition and appearance of the streets aforesaid satisfactory to the citizens dwelling in or frequenting the same.'

The third section declares that the payment of the five per cent ' shall be the legal compensation in full for the use and occupancy of the streets by said railway as provided by law, and shall constitute *an agreement* in the nature of a contract, between said city and constructing company, entitling the latter, or its successors, to the privileges and rates of fare heretofore or hereinafter legalized, which shall not be changed without the mutual consent of the parties thereto as aforesaid.'

A further employment of the five per cent is indicated by the fourth section, which reads as follows :

"Section 4. The compensation mentioned in the preceding section shall be considered as covering all claims for the removal of obstructions or structures, found upon the street line of said railway, owned by companies or individuals."

Further, the five per cent is not to be mingled with the general corporate funds, nor is it to be expended by the regular officers of the municipality, but by certain commissioners, subject only to the approval of the mayor. The language of the act on this head is as follows :

" To this end the commissioners aforesaid shall have power to expend revenues, received from the specified percentage, in such manner as they shall deem best to promote the object aforesaid, subject to the official approval of the mayor of the city of New York. The comptroller of said city is hereby directed to keep said revenue distinct and apart from all other funds, and to pay out of it warrants, when signed by the commissioners, and accompanied by vouchers for the expenditures indorsed as approved by the mayor, and the vouchers for the compensation of the commissioners when approved by the Governor, shall also be paid from the same fund in like manner."

These provisions must be considered in the light of the general principle, that exemption from taxation will not be lightly presumed. The intention to exempt must in every case be expressed in clear and unambiguous terms. (Cooley on Taxation, 146.)

464    PEOPLE ex rel. N. Y. E. R. R. CO. v. COM'RS.

First Department, December Term, 1879.

It was said in *The Mayor* v. *The Balt. and Ohio R. R. Co.* (6 Gill., 288), that " the right of taxation is never presumed to be surrendered by the sovereign power, and such surrender is never made, unless it be the result of express terms or necessary inference." And see Hilliard on Taxation, 72; *Gordon* v. *The Appeal Tax Court* (3 How. U. S., 133); *Delaware Railroad Tax* (18 Wall., 224.)

Now, in the present instance, it will be observed that the five per cent is to be kept distinct and apart from all other funds, and is to be specially applied to the improvement of the streets occupied by the railway, to the compensation of the commissioners, and certain contingent claims against the company. It will also be noted that the five per cent is not only for the use and occupancy of the streets, but for the privilege of charging certain rates of fare, in excess of that allowed to railroads in general.

These provisions are but apparently in the interest of the city. Closely scrutinized, their real character is evident. They are in the main in the interest of the relator. At all events their advantage to the city is remote and problematical. Certainly, there is nothing in them indicating an intention to exempt the relator from general taxation upon its structure for governmental purposes.

Again, the right to use and occupy the streets, to construct a railway thereon, and to charge certain rates of fare, is a franchise. *For that franchise* the Legislature required what, superficially considered, seems like the payment of a *bonus* in the shape of an annual proportion of net profit, the city being the nominal recipient, but the commissioners having substantially full control of its expenditure.

Assuming it, however, to be a valid and sufficient *bonus*, there is here no attempt to tax the franchise. Indeed, under the laws of this State, a mere franchise is not taxable, except by special statute. Nor could it probably be taxed, even by special statute, in view of the contract which the Legislature has made for these parties. But it is perfectly well settled that the structure is taxable, although the franchise may be exempt.

The case of *Smith* v. *The Mayor* (68 N. Y., 555), is directly in point. The court there said that " a person may have a franchise to build and maintain a bridge and take toll for its use. The bridge, as a structure, is not a franchise. He may not be taxed

on his franchise, but he can be taxed upon the structure or real estate. A railroad company has a franchise to construct and maintain a railroad. Its franchise cannot be taxed, but its road and other structures can be taxed as real estate."

The relators contention is, that as the easement cannot be enjoyed without the foundations and superstructure, the right to the former carries with it the right to the latter also. "To tax the accessories," says the learned counsel, "is to tax the principal, which is contrary to contract."

The answer to this may be given in the words of the Court of Appeals, in the Smith case : "The bridge and railroad may not be of any use to their owners without the franchise pertaining or incident to them, *and yet they may be taxed, and for the purpose of fixing their value, the uses to which they may be subjected must be considered.*" Citing as authority *The People ex rel. B and S. L. R. R. Co.* v. *Barker* (48 N. Y., 76).

That case was stronger than the present, for there the contract *was not made for the city by the Legislature*, but was the direct act of the municipal authorities. The grantee had paid to the city *the price agreed upon* for the franchise. He argued just as the relator does here, that having paid for the use and occupancy of the land, the tax upon the structures was an attempt to pay twice for the same use. But the court said, in substance : "No ; you are not taxed at all upon the franchise, but upon the structures. The latter may not be of any use to you without the franchise, and yet you may be taxed thereon."

To the same effect is the case of *The Hudson River Bridge Co.* v. *Patterson, ubi supra.*

And this is just, for the structure, *as such*, should pay for governmental protection ; and that, independent of the *bonus* for *the exceptional privilege* of erecting such structure *on city property*, and for the substantial monopoly of a lucrative business conducted thereon. Were it otherwise we might, for but a small building right compensation, soon have in our midst a large class of *privileged* structures of enormous value.

Fourth. As to the amount of the tax, it is claimed that there was a gross over-valuation, and that the assessors should have confined themselves to the area covered by the foundation.

But it is not the space in which the foundations rest that is taxed, but the foundations themselves, together with the superstructure.

The value is left by the law to the judgment of the assessors (*The People* v. *Barker*, 48 N. Y., 76), subject to revision where they proceed upon an erroneous principle. No such erroneous principle has been pointed out. Indeed, even if the space occupied by the relator were in question, the case would be covered by *The People* v. *Barker;* for it was there held that the assessors are not required to assess the real estate of a corporation as " an isolated piece of land, but each piece of property is to be estimated in connection with its position, its incidents and the business and profits to be derived therefrom." (See also the quotation above from the opinion in *Smith* v. *The Mayor.*)

Fifth. It follows that the tax upon the relator's personal property was erroneous. Indeed it is conceded, that if the structure be taxable as real estate, the personal tax cannot be upheld. The reason is obvious. The relator's capital stock (paid in or secured to be paid in) amounts to $1,068,000. Even the assessors' value of its real estate exceeds this sum. Consequently nothing at present remains to tax. It will, therefore, be unnecessary to consider whether the methods adopted on this head were regular and in accordance with the terms of the statute.

Sixth. The remaining question is as to the procedure. The point which the relator makes is, that the commissioners should have arranged the assessment rolls in five columns, under 1 R. S., 415, as amended by chapter 654 of the Laws of 1853, and chapter 456 of the Laws of 1857. Without considering the question whether these forms have been modified by the special statute for the city of New York (chap. 302, Laws 1859), it is sufficient to say that there is nothing on the record to show that the methods of the Revised Statutes have not been pursued.

The assessment roll is not before the court. It was not returned by the commissioners, for the reason that it was not in their hands at the time of the service of the writ, having already been delivered by them to the supervisors as required by law.

The books may have been kept, under chapter 302, of the Laws of 1859, and yet the assessment roll, prepared therefrom,

PEOPLE ex rel. N. Y. E. R. R. CO. v. COM'RS.    467

First Department, December Term, 1879.

may have been in the form prescribed by the Revised Statutes. The books contained all the necessary information. *Non constat*, but such information was properly utilized.

But even if the assessment roll were not in precise conformity to the statute, it by no means follows that the entire proceedings should be set aside and the relator absolved from taxation. Even in *The People* v. *Board of Assessors of Brooklyn* (*ubi sup.*), where the court held that the assessors had "disregarded the mandate" of the statute, and had thus "put it out of the power of the supervisors to assess a proper tax," the proceedings were corrected but not entirely reversed, and the assessment, as thus corrected, was directed to stand.

In other words, the relator must point out the particulars in which it has been prejudiced by non-compliance with statutory methods, and then the court will see that substantial justice is done

It is not denied, however, that there may be such radical defects and irregularities as to render mere correction impossible, and that where such a case is presented the entire proceedings must necessarily be vacated. But nothing of the kind appears in the case at bar.

Lastly, the point taken upon the argument that the records do not give the street, ward and map numbers is not repeated in the printed brief which has been submitted. It will therefore be unnecessary to notice it further than to say that the statute of course refers only to property *which has* street, ward and map numbers, and not to the 'other assessable property' which the deputy commissioners are also required to examine and assess.

The proceedings with respect to the foundation and super-structures must be affirmed; those with respect to the personalty must be reversed."

*David Dudley Field*, for the appellant. The foundations are not taxable within the decision in *People* v. *Assessors of Brooklyn* (39 N. Y., 81). The company having already paid five per cent of its net income into the city treasury, under an explicit provision of law (Laws of 1868, chap. 855, sec. 3), the city has received from the company all that it is bound to pay for the use

468     PEOPLE ex rel. N. Y. E. R. R. CO. v. COM'RS.

FIRST DEPARTMENT, DECEMBER TERM, 1879.

and occupancy of the streets. The agreement forbids the taxing of the right of way. By necessary inference it forbids also the taxing of anything necessary to the enjoyment of that right. The easement cannot be enjoyed without the foundations and superstructure. The right to the easement carries with it the right to them also. To tax the accessories is to tax the principal, which is contrary to the contract. (*Bangor R. R.* v. *Harris*, 21 Maine, 533; *Rome R. R.* v. *Mayor*, 14 Geo., 275; *Worcester* v. *Western R. R.*, 4 Met. 564; *Mayor of Baltimore* v. *Balt. and O. R. R.*, 6 Gill, 278; *Gordon* v. *Appeal Tax Comm.*, 3 How. U. S., 133.)

*Hugh L. Cole*, for the respondents. The respondents properly assessed the foundations and superstructure of the relators as real estate. (1 R. S., 905 [5th ed.], §§ 1, 3.) These foundations and superstructure are fixtures, even according to the common law definition, and as such would, independently of the statute, be taxable as "land" or "real estate." (*Walker* v. *Sherman*, 20 Wend., 655 [machinery in a woollen mill]; *Laflin* v. *Griffiths*, 35 Barb., 58 [machinery]; *Potter* v. *Cromwell*, 40 N. Y., 287 [portable grist mill affixed]; *Tabor* v. *Robinson*, 36 Barb., 483 [shelves in a shop]; *Main* v. *Schwartzwalder*, 4 E. D. Smith, 273 [furnace]; *Goodrich* v. *Jones*, 2 Hill, 142 [fences]; *Bishop* v. *Bishop*, 11 N. Y., 123 [hop-poles]; *Snedeker* v. *Warring*, 12 N. Y., 170 [a statue].) A fortiori are these foundations and superstructure to be considered land or real estate, for purposes of taxation, under the provisions of the statute. (*The Railroad Co.* v. *Cassity*, 46 N. Y., 46 [street railroad]; *The People* v. *Beardsley*, 52 Barb., 105 [railroad over Seneca reservation]; *Smith* v. *The Mayor*, 68 N. Y., 555 [piers]; *The People ex rel. Smith* v. *The Comrs. of Taxes*, 10 Hun, 209 [piers]; *Hudson River Bridge Co.* v. *Patterson*, 74 N. Y., 365 [bridge over Hudson river].

*Per Curiam:*

We think that the conclusion arrived at by the learned justice who considered the questions involved upon this appeal must be sustained.

It is our judgment that the cases cited by him in his opinion demand such a result. Doubtless we could enlarge upon the subjects embraced in it, but we do not deem it proper to retain the case for that purpose, inasmuch as we are advised that an adjudication of the court of last resort will be asked by one party or the other according as this appeal may be determined.

The judgment should be affirmed, with costs.

Present — BRADY, P. J., INGALLS and DANIELS, JJ.

Judgment affirmed, with costs.