Beckham, J.
An assessment in this proceeding was made by the defendants, and has been validated, so far as procedure is concerned, by chapter 1 of the acts of 1886.
The relators at the time the assessment was made, or upon the day upon which cause might have been shown for *160 reducing the assessment, appeared before the assessors and made application for a correction of this assessment, which application was, after deliberation, denied by the defendants.
A writ of certiorari was procured, and, upon its return, a referee was appointed to take testimony. The referee has reported, the testimony taken, and the case now comes up for final adjudication.
The assessors in this proceeding have assessed the property of the. relators, in the town of Hoosac, at the sum of $255,057.44, which makes an assessment per mile of $21,-762.58. There are in the town 128 and 85-100 acres of land belonging to relators. The value claimed by the relators, of this same property, is $58,600, making an over-valuation, as claimed, of $196,457.44.
No one on reading the evidence in this proceeding, taken before the referee, can come to any other conclusion, as it seems to me, than that this assessment is erroneous, in that it is grossly excessive.
It appears by undisputed evidence, that there was, after the completion of the road, and for the twelve months prior to June 30, 1883, a deficit of $34,440.36; the gross earnings for that period being $336,858.50; and the operating expenses and taxes $367,298.86. For the next twelve months the amount of net earnings was $20,626.59; and for the twelve months ending the 30th of June, 1885, the gross earnings were $510,235.66, while the operating expenses and taxes amounted to $538,439.23, leaving a deficiency of $28,-203.57, and a total deficiency of earnings to pay the operating expenses, for three years, of $38,017.34, The railroad has a bonded debt of $2,000,000, and not one dollar of interest has been paid on that amount from its earnings, and no dividends have been paid to the stockholders for that time.
The testimony on the part of the relators shows that the value of their property in the town of Hoosac, in the year 1885, did not probably exceed $5,000 per mile. Certainly it did not reach $10,000 per mile. The testimony on the part of the defendants shows that one witness thought it would amount in value to $20,000 a mile, but he knew nothing of the earnings and expenses of the road, and stated that he was himself almost unable to form an. opinion of the value of the property; and at the same time he stated that his opinion was, that the earning capacity of the road was one of the chief factors in determining its value. The other witness who was sworn for the defendants put the value of the property of the relators at $4,500 a mile.
Upon the law as laid down in some of the late cases in the supreme court there is no doubt but that one of the chief factors in determining the value of a railroad for the purposes of assessment, is the earnings of the company, *161 or its capacity to do business, and the return of a fair equivalent to its stockholders for the money invested. The case of The People, etc., v. Barker (48 N. Y., 70), cited by the learned counsel for the defendants, it seems to me, is not at war in the slightest degree with the law as laid down in the supreme court. In the case in 48 N. Y., the court holds that, in assessing the real estate of a railroad corporation, assessors are not required to assess it as an isolated piece of land, but each piece of property is to be estimated in connection with its position, its incidents, and the business and profits to be derived therefrom. That is subtantially the rule as laid down by the supreme court.
Here is a property which cost a very large amount of money. That portion of it which is situated in the town of Hoosac, for the purpose of taxation, is to be regarded as part and parcel of the whole railroad, and the whole line is to be taken into consideration, its capacity for earnings, and its expenses, are all to be taken into account, and from that among other things is to be evolved the proper amount which should be assessed upon the company’s property in each town through which the line passes. -
In this particular case we have a corporation using a railroad which has been lately built, which corporation for the last three years has made a net loss in operating its road of over $38,000, and has been able to pay no interest on its bonded indebtedness of $2,000,000, and paid no dividends to stockholders, and which corporation is assessed $255, - 057.44 upon 128.85 acres of land, making about $2,000 an acre of valuation. That must be very far above the value of the property taken as a farm property, and with the cost of the rails as old iron added, while the value of the property, taking it in connection with the whole railroad, under the circumstances of the last three years, running behind at the rate of nearly $40,000 in that time, in its mere expenses, and unable, of course, to pay a dollar of its indebtedness or any dividends to its stockholders, such a property in such a time must necessarily be of very little or no value as a railroad. The possibilities of the future must be left to take care of themselves, and when the company is able to earn any money, over and above its actual operating expenses, the assessors will have the opportunity then to determine the value of the property in their town for assessment, guided by those facts.
The assessment must be set aside as grossly excessive and erroneous, and I do not think it necessary, upon the evidence, to order a re-assessment of the property, and I think the assessment, as made, can be corrected in such a manner that it shall accord with law and and as the fact is *162 developed in this proceeding. I accordingly direct the assessment to be reduced to the sum of $10,000 a mile, which is somewhat higher than the relators’ witness said he would give for the road, but I will be sure and have it high enough. The gross sum may be stated in the order as settled. This much has appeared to me as entirely plain. The only question I have had in regard to this matter, after reading through the evidence and making myself acquainted with the facts, has been as to what disposition I should make regarding the costs of the proceedings.
By section 6, of the act under which these proceedings are taken, costs are not to be allowed against assessors, unless it shall appear to the court that they acted with gross negligence, or bad faith, or with malice. In this case it appears that after the assessment was made, and upon the grievance day, as it may be termed, counsel for the relators, and one of its general officers, appears before the assessors, and upon such appearance the facts, which have been already detailed herein, regarding the condition of the financial affairs of the railroad company, were given to the assessors. The decisions were read to them, which have been referred to by this court, in which it was stated what the true rule was upon which a valuation should be made, and that such true rule required that the fact of the earnings should enter largely into the question as to what that value should be. So it appeared before these assessors that the true bill of law was given them; that the facts in regard to this railroad company as to its earnings; as to its expenses; as to its bonded indebtedness; and as to its failure to earn any dividends; were all given to the defendants herein, and that they, with full light and entire knowledge upon the subiect made their assessment at what this court determines to be an outrageous valuation. By the evidence, it would appear that these defendants have made up their minds that over $20,000 per mile must be the sum to assess these relators upon their property in the town of Hoosac, and this too without any reference to the material facts in the case. The evidence shows that such assessment is grossly excessive, and that they intend to stand by such assessment for the future upon the same state of facts that now exist, unless the court should step in and reduce their assessment. In other words, that, paying no attention to the rules of law, paying no attention to the facts in this case, regardless and reckless as to both, they insist on making this erroneous assessment for no other reason, that the court can see, than that it is in their power, in the first instance, to thus make it.
Under these circumstances, although the assessors testify they are not actuated by malice or bad motives towards the *163 relators, the court can see nothing else than a reckless disregard of undisputed evidence, which, if properly weighed and proper attention given to it, would necessarily result in a very large decrease in the amount of the assessment.
Therefore, if with full knowledge of these facts, and with, full knowledge of the rules of law applicable thereto, the assessors recklessly and willfully refuse to be guided by such evidence, or bound by such rules, I think that they are clearly within the provision of the statute, showing that they acted either with gross negligence or bad faith.
In order that it may be known that assessors, under such circumstances as this proceeding developes, have no right to willfully ignore evidence, and to recklessly refuse to be guided by the rules of law, and where, as in this case, the matter is entirely plain, and the evidence substantially uncontradicted, and where no unprejudiced mind can come to any but one conclusion, viz., that the decision arrived at by the assessors is unjust and outrageously excessive, and when such facts clearly appear before the court, it will, as in this case, and in the course of a due administration of the law, visit the defendants with the penalty, in the way of costs, that the statute permits.
For these reasons I grant the motion, and hereby reduce .this assessment to $10,000 per mile, with costs against the defendants.