PEOPLE *ex rel.* FITCHBURGH R. Co. *v.* ASSESSOR *et al.*

PEOPLE *ex rel.* BOSTON, H. T. & W. R. Co. *v.* SAME.

(*Supreme Court, Special Term, Albany County.* June 30, 1888.)

RAILROAD COMPANIES—TAXATION—ASSESSMENT.

    The proper method of assessing a railroad is to take into account the cost, location, and probable increase of business of the road, and when practicable to take the average net earnings of the whole road, including branches, feeders, etc., for a series of years, capitalized at 5 per cent., which, divided by the number of miles of main track, gives the value per mile for taxable purposes; and this rule applies, although the road for the given years comprised a number of distinct roads, since consolidated under an agreement fixing a greater value per mile than that arrived at by this method, it not appearing that the consolidation has increased its earning capacity.

   On *certiorari* to an assessment.

   Actions by the people on the relation of the Fitchburgh Railroad Company against the assessors of the towns of Hoosic, Pittstown, and Schaghticoke, and same on the relation of the Boston, Hoosac Tunnel & Western Railroad Company against the same.

   *T. F. Hamilton,* for relator.   *C. E. Patterson,* for defendants.

   MAYHAM, J. The relators, by *certiorari,* seek to review and modify the assessment of their railroad by the assessors of the above-named towns, under the provisions of chapter 269, Laws 1880. The case shows that the main tracks of the railroad in the different towns are assessed at the rate of $30,-000 per mile, and that in some instances the parallel line of the track acquired by the relator is assessed at the same rate, making what is claimed by the relator at the rate of $60,000 per mile for the double track, under the assessment of 1887, which this *certiorari* seeks to review. The contention of the relators is that the assessors, in making the assessment, did not adopt the approved legal method of assessing railroads, which, they insist, should be determined from the average net earnings of the railroad, for a series of years, capitalized on the basis of 5 per cent. per annum, and divided by the aggregate number of miles of main track, and the relator insists that the assessors wholly ignored and refused to take into account that method of assessment. The defendants insist and attempt to show by their proof that they estimated and assessed the value of the railroad in their respective towns at its full, fair value, as required by statute, and took as evidence to justify such assessment the price which the relator allowed for such roads in their consolidation agreement. The true method to be adopted by assessors is to ascertain and assess real property at its full, fair value, as the same would be appraised in the payment of a just debt by a solvent debtor. Chapter 57, Laws 1884. In determining that value, the assessors may, in assessing railroad property, take into account the cost, location, feeders, probable increase of business, and may and should also, if practicable, ascertain the aggregate net earnings of the railroad which they may capitalize and consider in determining such full, fair value. *People* v. *Hicks,* 105 N. Y. 198, 11 N. E. Rep. 653. And in making this estimate it is manifest that the assessors cannot be confined to any particular portion of the railroad. In the above case the supreme court, at general term, say: "The estimate of value of any portion of the road cannot be intelligently made without some knowledge or information of it as a whole, and its business earnings and ordinary expenses. Railroads are constructed with a view mainly to revenue and profit upon investments, and hence the productive capacity and its earnings are matters for consideration in the estimate of value." *People* v. *Hicks,* 40 Hun, 601.

   In the case now under consideration it seems from the evidence of the assessors themselves that they paid but little or no regard to the earning capacity of the railroad, although it appears that sworn tabulated statements

were presented to them, and filed with them on or before grievance day, and before the completion of the assessment rolls. From these tables, put in evidence in the manner which seems to be approved in the case above referred to, the value per mile of the main line of said railroad appears to be $13,-455.07. And this estimate does not seem to be challenged or controverted by any evidence on the part of the defendants. It is true that this estimate, based upon the capitalization of net earnings, embraces a period prior to the act of consolidation, and yet it embraces the same roads, with substantially the same connections, though operated as independent lines, and there seems to be no adequate reason in the proof that the consolidation has materially increased the earning capacity of said roads above their net aggregate earnings before the consolidation. Nor can I see that the price specified in the articles of consolidation of these roads with the Fitchburgh Railroad Company should be controlling, as an admission of the value of said railroads thus consolidated. The consideration for such consolidation consisted of stock and bonds, and could hardly be considered as representing cash values for a definite and certain amount; and while the assessors might properly consider the facts connected with the consolidation, so far as they bore legitimately upon the question of value, they were in nowise controlling, as evidenced by the act of the assessors themselves. The earning capacity would seem to furnish a better and more approved test of value. *People* v. *Weaver*, 67 How. Pr. 477. In the case of *People* v. *Wilber*, 9 N. Y. St. Rep. 159, the assessment of a portion of the railroad now under consideration came before this court on *certiorari*. In that case the assessors of the town of Hoosic assessed the relator's railroad at $21,762.58 per mile, and this court, on *certiorari*, reduced the assessment to $10,000 per mile; and Justice PECKHAM, in delivering the opinion of the court, says: "Upon the law as laid down in some of the late cases in the supreme court, there is no doubt but that one of the chief factors, in determining the value of a railroad, for the purposes of assessment, is the earning of the company, or its capacity to do business." And the learned judge reiterated the rule laid down in *People* v. *Barker*, 48 N. Y. 70, that assessors, in assessing a railroad, are not required to assess it in isolated pieces of land, but each piece of property is to be estimated in connection with its position, its incidents, and the business profits to be derived therefrom. Treating the determination of the case of *People* v. *Wilber*, above referred to, as a determination of the assessed value, entitled to some consideration by the defendants, and that determination, taken in connection with the undisputed proof of the net earnings of the railroad, and the capitalized value per mile as indicated by such net earnings, and at the same time keeping in view the possible increase of business and net earnings by reason of the consolidation, I can find no warrant in the evidence before me for assessing their railroads at the average rate of $30,000 per mile, and am forced to the conclusion from the evidence that such assessment is excessive and erroneous, and should be set aside, and the assessments in the several towns be reduced, and fixed at the rate of $14,000 per mile. There is nothing in the evidence that would justify the conclusion that the assessors have acted in bad faith in making these assessments.