PEOPLE *ex rel.* DELAWARE & H. CANAL CO. *v.* GANLEY *et al.*, Assessors.

(*Supreme Court, General Term, Third Department.* February 4, 1890.)

TAXATION—ASSESSMENT—REDUCTION.

    Though, on *certiorari* to review an assessment, it appears that all the other property is assessed at only one-fifth of its value, in violation of 1 Rev. St. N. Y. p. 393, § 17, providing that the assessors shall assess property as they would appraise it in payment of a just debt due from a solvent debtor, yet, under Laws N. Y. 1880, c. 269, requiring an unequal assessment to be made proportional with the others, relator's property will be assessed at a fifth of its value.

Appeal from special term, Washington county.

*Certiorari,* on the relation of the Delaware & Hudson Canal Company, to review an assessment of the relator's real estate in the village of Fort Edward for the year 1887. The assessors appeal from an order reducing the assessment.

Argued before LEARNED, P. J., and LANDON, J.

*A. D. Wait,* for appellants. *Edwin Young,* for respondent.

LEARNED, P. J. This is an appeal from the order of the special term made on the return to a *certiorari* and on the evidence taken reducing the assessment of the relator's real estate from $45,000 to $12,610. The first thing to be noticed in these proceedings is that the petition for the *certiorari* charges that the real property on the assessment roll, other than that of the relator,

has been assessed, not at its full value, but only at about one-fifth thereof, and that the assessors, in their return to the writ, admit this, and further assert, under oath, that the property of the relator, and the other real property on said roll, was assessed at one-fifth of its full valuation. Thus we have an admission by these assessors that they have violated the statute requiring them to assess the property as they would appraise the same in payment of a just debt, due from a solvent debtor. 1 Rev. St. marg. p. 393, § 17. We have also their further admission that the oath attached to the roll under chapter 201, Laws 1885, was false; for that oath contains a statement that they have estimated the value of the real estate at the sums which a majority of the assessors have decided to be the full value thereof. Since they thus admit the falsity of this oath, and the violation of their duty, no confidence can be put in their assertion that they estimated the relator's property also at one-fifth of its value. It is equally probable, so far as their oath and their action is concerned, that they estimated it at five times its real value. We agree with the language of the learned justice, who remarks that "the assessment was grossly illegal, and purposely made so." We are not sure but that on the face of this admission enough appears to justify the court in striking out altogether any assessment against the relator. The utter falsity of the oath of the assessors, coolly admitted on their return to the *certiorari*, would, perhaps, be sufficient ground for the relator to assert the invalidity of the assessment against the company. But that question is not here, for the relator does not appeal. But we cannot pass over the matter without a rebuke to these assessors for their gross misconduct.

We are, then, only to see that the violation of the statute shall be uniform; and that in disobeying its commands, and then taking an oath that they have obeyed them, the assessors treat all with equal partiality. The learned justice came to the conclusion that the real property of the relator on the roll was worth $63,043, and that, as all other property was assessed at one-fifth, this must be assessed at $12,610; and probably the authority of chapter 269, Laws 1880, as to unequal assessments, justifies this mode of rectifying injustice. The real estate of the relator in Fort Edward consists of 17 acres, on which are 2.42 miles of main track, 2.35 miles of side track, 1 freight-house, 1 water-tank, 1 engine-house, 1 store-house, 1 passenger depot. Now, it is evident that, while it is not difficult to arrive at a reasonably accurate valuation of the freight-house, tank, etc., it is extremely difficult, if not impossible, to establish a fair valuation of the land on which the tracks lie, with its superstructures. The difficulty is in the nature of the case. The piece of the road lying in this town, if not used in connection with the rest of the road, would probably have a very small value, being a narrow strip, unsuitable for any other use than that to which it is now put. And, again, if it be considered in connection with the rest of the road, even then the profit derived from the working of the road comes largely from the possession and use of engines and cars, and from the ownership of what we may call the "franchise." In *People* v. *Hicks*, 105 N. Y. 198, 11 N. E. Rep. 653, the court of appeals, in speaking of the various modes of determining value, says, very accurately, that they are only tentative; that the earning capacity is simply an aid in determining value, in connection with many other matters. The same idea, though not as strongly expressed, is found in the opinion of the general term in 40 Hun, 601, and in *People* v. *Pond*, 13 Abb. N. C. 7. None of these cases decide that such a computation as is mentioned in detail in some of the opinions is the sole and conclusive process for ascertaining value. It is in regard to this as in regard to other real property. An opinion as to its value is the result of many considerations; among them, original cost, cost of present reproduction, and earning capacity, which is often shown by the rent obtainable. It is by no means a fair mode of estimating the value of a piece of land to ascertain the net profits which are made upon it, or by means, in

part, of its use. For instance, the net amount of profits made in a lawyer's office would not be any, or at least very little, evidence of the value of the office as real estate.

In the present case we have carefully examined the evidence on both sides. The views of those who have testified as experts are widely conflicting,—the relator's witnesses stating the value in Fort Edward at not over $63,000; the defendant's witnesses making various estimates of the same real estate, according to different calculations, from over $500,000 to over $800,000, or, again, over $236,000. Another estimate of the defendants' witness is based on the rent paid by the relator to the Rensselaer & Saratoga Railroad Company, and ranges from over $198,000 to over $345,000 of this same land. All of these are estimates of the value of 17 acres of land in a village, and of land, too, which is evidently not suitable, in general, for building lots. Now, after looking over these estimates very carefully, and over the facts on which they are founded, we see no reason to disagree with the conclusion to which the learned justice came at special term. The question, of course, is simply, what is the value of these 17 acres, according to the rule of the cases above cited? If that can be determined, then the defendants admit that other real estate is assessed by them at one-fifth of its true value. Of course, it follows, under the statute of 1880, that the real estate of the relator must be assessed proportionally. It does not seem to us that anything would be gained by making in this opinion an analysis of the evidence, and of the various modes of computation adopted by the witnesses. We can in the end only say whether, in our opinion, the conclusion of the learned justice, on all the facts before him, was incorrect. We think that it was not. Ordinarily the order would be affirmed without costs; but the admission of the defendants that they estimated real property at one-fifth its true value shows such a violation of duty that their assertion that the assessment of the relator's property is "just and equal, and in no respect erroneous," has little weight. Order affirmed, with costs and disbursements against appellants personally.