PEOPLE *ex rel.* NEW YORK, L. E. & W. R. CO. *v.* ZOELLER *et al.*

(*Supreme Court, Special Term, Erie County.* July, 1891.)

1. TAXATION—REDUCTION OF ASSESSMENT.

Laws N. Y. 1880, c. 269, §§ 1, 4, provide that if on return of a writ of *certiorari* to the supreme court, on petition of any person or corporation aggrieved, to review an assessment for taxation made in any town, it shall appear that the assessment is unequal, in that it has been made at a higher proportionate valuation than on other property, the court may order a reassessment or a correction. *Held,* that where the property of a railroad company in a certain town has been assessed at nearly its full value, and the other property of the town at not more than 40 per cent. of its value, the court will order a ratable reduction of the assessment of the railroad property.

2. SAME—REVIEW OF ASSESSMENT—REFERENCE.

Section 4 provides that, if it shall appear necessary on the return of a writ of *certiorari* to review a tax assessment, the court may appoint a referee to take such testimony as it may direct. *Held,* that where the board of assessors decided adversely to an application by the representative of a railroad company for a reassessment, and the return to the writ of *certiorari* contained an instrument signed by the assessors, stating that they refused to hear testimony offered by the representative of the railroad in addition to his affidavit, a reference will be ordered.

3. SAME—EVIDENCE.

Where on the reference the representative of the railroad and the chairman of the assessors testified that such instrument was read before it was signed, it will be conclusive against the assessors as to their refusal to hear further evidence, though they testified that they understood that the instrument contained only a statement that the representative of the railroad had appeared before the board.

4. SAME—VALUATION OF RAILROAD PROPERTY.

As an aid in determining the value of that portion of a railroad situate in any town it is proper to consider the proportionate value of the rest of the line.

5. SAME—PROOF OF VALUE.

The evidence of a large number of tax-payers showed that in some instances the taxable property of the town had been assessed at a quarter of its value, in others at about one-third, in others at between one-third and a half, in a few instances at about half, and in still fewer at a greater valuation; and a witness, who for many years had appraised property for the purpose of recommending loans to be made thereon, testified that the property was not assessed at above 40 per cent. of its value. *Held* sufficient to support the referee's finding that the property was assessed at not more than 40 per cent. of its value.

6. SAME—COSTS.

Where on *certiorari* to review a tax assessment it appears that the assessors were actuated neither by gross negligence, bad faith, nor malice, and the amount of reduction granted is materially less than that contended for, costs will not be taxed against the assessors, as is provided in chapter 269, § 6.

*Certiorari* against Frederick Zoeller and others, assessors of the town of Alden, and another, to review the assessment of property of the New York, Lake Erie & Western Railroad Company for the year 1888.

*Frederic Almy*, for relator.  *Joseph E. Ewell*, for respondents.

DANIELS, J.  The assessors in making their assessment roll for the year 1888 conformed to the different requirements contained in the statutes of the state on that subject, so far as their formal proceedings are to be considered. The roll was made and subscribed during the time prescribed for that purpose, and it was deposited for examination by persons claiming to be aggrieved by the assessments, and notice given for that object, as it was required by law.  The relator, by its agent and attorney, appeared before the assessors during the time they were engaged in reviewing the assessments, and presented objections to the assessment made of the property used by the relator for railway purposes in the town of Alden.  This consisted of nearly six miles of double-track railway passing easterly and westerly through the town, and about a mile of side track, together with depots and buildings used in the business of the company.  The road was constructed originally by the Buffalo, New York & Erie Railroad Company, between the city of Buffalo and Corning, in the county of Steuben, and in 1863 was leased to the Erie Railway Company for the period of 490 years, at an annual rent, subject, on the part of the lessee and its assigns, to the obligation to pay the taxes and assessments imposed upon the property.  The relator seems to have acquired the title to this lease, and was, at the time of the assessment, engaged in operating the railway and using the railway property.  There was, accordingly, no impropriety in assessing the property for taxation as the property of the relator.  But it was objected, by an instrument in writing filed with the assessors, that they did not tax the real estate in the town, other than that owned by the relator, at its full and true value, but had assessed it at an average not exceeding 40 per cent. of that value; and that they had omitted to place a considerable part of the personal property owned by the taxable inhabitants of the town upon the roll, and had fixed the valuation of such property at no greater rate than 40 per cent. of its value, where it had been placed upon the roll.  It was also objected that the notice required by law had not been made and filed after the completion of the roll.  But, as already observed, this third objection had no ground whatever to rest upon.  But, as to the first and second, an affidavit was produced and filed with the assessors, which, it was claimed on behalf of the relator, sustained these other specific objections.  The property was assessed at the sum of $140,000, and the agents of the relator applied to have this assessment very substantially reduced. The assessors refused to make any reduction in the amount of the assessment; and, after their confirmation of the roll, an application was made for this writ of *certiorari* to review the assessment, under chapter 269 of the Laws of 1880; and the writ was accordingly issued to the assessors, and they made a return to it.

In the petition for the writ it was stated that an offer was made by the person whose affidavit was produced to submit to any further examination under oath that the assessors desired to make concerning the assessment, and that the assessors, in substance, declined to receive any further evidence tending to establish the inequality or illegality of the assessment itself. After the return to the writ an application was made for a reference[1] to take proof concerning the controverted matters of fact affected by the proceeding; and a referee was appointed, before whom a large amount of evi-

---

[1] Laws N. Y. 1880, c. 269, § 4, provides that, if it shall appear necessary on the return of a writ of *certiorari* to review a tax assessment, the court may appoint a referee to take such testimony as it may direct.

·dence was produced, and has been returned to the court pursuant to its or-
der by the referee, with his opinion as to its effect. On the hearing before
the referee the three assessors were sworn and examined as witnesses, and
testified that they had assessed the property of the company at what they
·deemed to be its full and fair value, so far as it was located in the town of
Alden, but that they did not decline to hear further proof than the affidavit
which was submitted to them concerning the propriety or illegality of the
.assessment. The evidence of William J. Creamer, who was present repre-
senting the railway company before the assessors, is directly to the contrary;
for he testified before the referee that the assessors did decline to receive any
further proof, or to make any reduction in the valuation made of the com-
pany's property upon the roll; and in confirmation of his evidence it ap-
pears by the testimony of the assessors themselves, as well as from his state-
ments, that when a decision was reached by the assessors they were requested
to subscribe a paper, which was produced, as an embodiment of their de-
·cision concerning the subject of further proof. And it appears by the tes-
timony of the assessors, as well as that of Mr. Creamer, that such an in-
.strument was signed, and it has been made a part of the return to the writ
·of *certiorari.* And by that instrument it is stated that the offer was made
by the affiant in the affidavit to submit to an oral examination concerning
the value of this property in the town of Alden, and that this offer was
not accepted. But it is stated in the instrument that "they accepted the
.above proof," that is, the affidavit, "as sufficient, and waived all other proof
as to the value of said property." The statement of the assessors is that
they did not understand this instrument to contain any more than a state-
ment of the fact that these representatives of the company had appeared before
the board. But the chairman of the board concedes that the instrument was
read, and Mr. Creamer testified that he read it word for word as it had been
written before it was signed by Mr. Zoeller, the chairman of the board. And
this written evidence, presented and accepted in this manner, must be re-
·ceived as the most reliable statement of what transpired before the assessors
.at the time referred to. They may very well have forgotten what precisely
was said concerning the production of further proof. But no such infirm-
ity can be attributed to this written statement. It must accordingly be as-
sumed that the assessors accepted the affidavit as sufficient for the purposes
of the application, and declined to receive further proof; and for that rea-
son, after they had acted adversely upon the affidavit as evidence, it was
·entirely proper, under the act already mentioned, to direct a reference to take
such further proof as might be offered concerning the legality of this as-
sessment; and that proof has been taken very much at large before the ref-
·eree; and he has, as its result, certified that in his opinion the effect of the evi-
·dence is that the assessment should be reduced to the sum of $77,710.18, to
·equalize it with the assessments of the other property of the town.

This conclusion appears to have been reached by the referee, not only from
the evidence of the witnesses taken before him, but from the statements of
the expenses and earnings of the relator in carrying on and transacting its
railway business. The assessors themselves determined the value of the
· property to be assessed in the town by their own observation and judgment,
.and the best information they could secure, and reached the conclusion that
the fair proportionate valuation of this property to the residue of the railway
property of the company was the sum of $140,000. And in reaching that
·conclusion they seem to have apportioned the valuation to the entire valua-
tion of the company's railway devoted to the business which, by means of it,
it had been engaged in carrying on; and that was justified by the rule or
principle applied in the case of *People* v. *Barker,* 48 N. Y. 70. That was
the best evidence which the assessors had before them; and from that evi-
·dence it is stated by them, as they were required to attest the fact by chap-

ter 201 of the Laws of 1885, that they had assessed the property of the company in the town at its full and fair value. But from the statement of the earnings and expenditures of the company for the year ending on the 30th of September, 1889, and other statements concerning the expenditures, earnings, and profits of the relator's entire railway system, the referee was able to adopt the conclusion that the valuation of the assessors was less than the value of this property in the town of Alden; and in the deduction suggested by him in his opinion as to the effect of the evidence he has been, in part at least, governed by this additional testimony; and there is no reason to believe that for this purpose he placed the value of the property at too high a figure. Such evidence has been sanctioned as a mode by which the value of railway property may be ascertained for the purposes of taxation. *People* v. *Keator*, 17 Abb. N. C. 369; *People* v. *Hicks*, 40 Hun, 598, affirmed 105 N. Y. 198, 11 N. E. Rep. 653.

But, after all, the earnings and expenditures, as they may be gathered from the reports and accounts of the company, can extend no further than to indicate approximately the value of the railway; for a precise identity cannot be expected to exist between the earnings and expenditures of any divisible part of the railway property and those of the entire remainder. At most, an ingenious estimate may be made from this source, but accuracy, certainly, cannot in that manner be attained. And so it was considered in *People* v. *Ganley*, 8 N. Y. Supp. 563. But, taken altogether, the referee did have good reason for his conclusion that this assessment, as a strict matter of valuation, was lower than it should be; and that, in recommending its reduction to the sum already mentioned as 40 per cent. of its true valuation, the evidence was sufficient to warrant that conclusion. Whether the property of the town subject to taxation had been valued by the assessors at no more than 40 per cent. of its actual value was the subject to which the mass of the testimony before the referee was directed. As to that a large number of the taxable inhabitants of the town were examined, and their testimony taken and subscribed by them. And it appears from their examination that the property owned and referred to by them was placed upon the assessment roll at a valuation in some instances not exceeding a quarter of the value, in others about one-third, and in other instances between a third and a half, and in a few instances at about half of its actual valuation, and in still less at a greater valuation. One of the witnesses whose testimony was taken before the referee, and which is of considerable significance in the case, was that of Amos Freeman, who had been engaged for a series of years in appraising property for the purpose of recommending loans to be made upon it; and he had examined in this manner the property of a large number of persons in the town of Alden, and stated in a table contained in his evidence that valuation, together with the amounts for which the property was assessed upon the assessment roll. And it appears from that, as well as the other evidence produced before the referee and returned by him to the court, that the assessors in making their assessments had probably not exceeded 40 per cent. of the true valuation of the property assessed. It was stated by many of the witnesses examined that farming property in the town had fallen in value, generally speaking, from 8 to 20 or 30 per cent. And the action of the assessors in assessing the railway property of three different companies passing through the town seems to have been conformed to that reduction, although, according to the earnings of the relator, its business appears to have been more prosperous for the year 1888 than it had been for previous years. But, as a matter of fact, the property used by this company in the town of Alden had been reduced in its assessed valuation by the assessors from $250,000 in 1877, to the sum of $140,000 in the year 1885, at which it was continued to the year 1888, now in controversy.

The evidence as to the scale of assessment has been obtained from so many

persons, and relates to so many different localities in the town, as to support the opinion adopted by the referee that the valuation generally adopted for the assessments of other property in the town did not exceed this sum of 40 per cent. And the consequence from that is that this company by this assessment would be required to pay a larger proportion of the taxation of the town than it was legally obliged to pay. The discrimination between its property and that of other property owners, with the exception, probably, of the New York Central Railroad Company, was not that of mere isolated differences; but it was so extended as apparently to include all the property, generally speaking, upon which the assessors undertook to act in making their assessment. And that, under the authority of *People* v. *Carter*, 109 N. Y. 576, 17 N. E. Rep. 222, as well as the provisions of this act of 1880, entitled the company to a reduction in the assessed value placed upon its property; for it has been made the duty, on account of this inequality, of the court to direct this proportionate reduction. The act, for this purpose, has been made to include erroneous assessments by reason of over-valuation or inequality, or when the assessment shall be made at a higher proportionate valuation than other real or personal property on the same roll; and, where that is found to be the case, the court has been required to order a reassessment of the property of the petitioner, or the correction of the assessment, in whole or in part, in such manner as shall be in accordance with law, or as shall make it conform to the valuation and assessments applied to other real or personal property in the same roll, and secure equality of assessment. Laws 1880, c. 269, §§ 1, 4.[1]

But one reasonable conclusion can be adopted from the evidence which has been returned under the authority of this writ; and that is that the relator's property in the town was assessed at what was, in the judgment of the assessors, its full and true value, but which, by the evidence of the earnings and expenditures of the company, appears to have been less than that value, but not nearly so much less as the other property of the town was assessed for upon the assessment roll; and, to make the valuation of the company's property liable to taxation in this town conformable to the general rule of assessment followed by the assessors for other property, it becomes necessary to reduce the assessment of this company to the sum mentioned by the referee of $77,710.18 for the year 1888; and such a reduction will be directed by the order to be entered upon this decision. But inasmuch as the reduction is materially less than that which was claimed on behalf of the company before the assessors, and they do not appear to have been actuated by malice or bad faith, or to be chargeable with gross negligence, this reduction will be without costs, as it has been required in that event it shall be, by section 6 of chapter 269 of the Laws of 1880.[2]

---

[1] Laws N. Y. 1880, c. 269, §§ 1, 4, provide that if, on return of a writ of *certiorari* to the supreme court, on petition of any person or corporation aggrieved, to review an assessment for taxation made in any town, it shall appear that the assessment is unequal, in that it has been made at a higher proportionate valuation than upon other property, the court may order a reassessment or a correction.

[2] Laws N. Y. 1880, c. 269, § 6, provides that costs shall not be allowed against assessors whose proceedings may be reviewed under the provisions of the act, unless it shall appear that they acted with gross negligence, in bad faith, or with malice.