PEOPLE ex rel. CONSOLIDATED TELEGRAPH & ELECTRICAL SUB-WAY CO. v. BARKER et al., Commissioners of Taxes, etc.

(Supreme Court, Appellate Division, First Department. June 19, 1896.)

1. TAXATION—ASSESSMENT OF PERSONAL PROPERTY BY CORPORATION.
    The assessors, in determining the value of the realty to be deducted from the value of all the property of a corporation, are not concluded by the assessed valuation of such realty. 39 N. Y. Supp. 106, affirmed.

2. SAME—VALUATION—ELECTRICAL SUBWAYS.
    The cost of constructing an electrical subway is not a proper basis for assessing its value, where it appears that more than half the subways are unoccupied, that the business of the owner has not been profitable, as shown by the fact that its stock has never paid any dividends, and that it is in default in the interest on its bonds.

Appeal from special term, New York county.

Certiorari by the Consolidated Telegraph & Electrical Subway Company to review the action of Edward P. Barker and others, commissioners of taxes and assessments, in assessing the personal property of relator for the year 1895. From an order dismissing the writ (39 N. Y. Supp. 106), relator appeals. Reversed.

The appellant is a domestic corporation engaged in the business of constructing, maintaining, and operating subways in the various streets and avenues of the city of New York, for the purpose of holding and containing electrical wires and conductors. While the books were open for correction, the appellant submitted to the commissioners a statement purporting to disclose its condition for purposes of taxation on the second Monday of January, 1895, verified on the 20th day of March, 1895, which exhibited its—

| | | |
|---|---:|---:|
| Miscellaneous assets at | $ 153,057 60 | |
| Cash | 39,900 00 | |
| Capital stock actually paid in for patents and property | 1,835,100 00 | |
| | | $2,028,057 60 |

—Its indebtedness and nontaxable assets and assessed value of its real estate as follows:

| | | |
|---|---:|---:|
| Bonds | $3,599,000 00 | |
| Outstanding obligations for unpaid vouchers, interest, etc. | 322,385 45 | |
| Assessed value of real estate | 715,000 00 | |
| Amounts invested in the stock of other corporations taxed on their capital | 1,348 00 | |
| | | $4,637,733 35 |

| | |
|---|---:|
| Deficiency of taxable assets | $2,609,676 75 |

Dissatisfied with this, the commissioners demanded a supplemental statement, and the relator itemized what has been classified as miscellaneous assets, and stated that the real estate of the company "consists, exclusively, of its subways laid in the city of New York; * * * that the total cost of their construction has been about $5,423,717.94; that only between 39 and 40 per cent. of the subways actually laid by this company are occupied, and over 60 per cent. of said subways represent an actual loss to the company, and yield no income whatsoever." In regard to the value of the subways, as distinguished from their cost, the report stated that, "in laying the subways, the company was not allowed to lay them in such streets and places, or to such an extent, as to the company seemed best or most profitable, but was compelled by the board of electrical control to lay them in such streets and places, and to such an extent, as would, in the judgment of the said board, best meet the existing and future public requirements; * * * that, under the law, this company is required to furnish space in its subways for the accommodation of the conductors of the city, for which the city pays no rental whatsoever; that the space occupied by the city wires would, if rented to other uses, represent an annual income to this company of $14,558.17." The report then proceeded to state: "That, under these circumstances, the cost of the subways to the company bears no relation to their value as property or investment. That the department of taxes and assessments, in estimating the value of the subways for the purposes of taxation as real estate, were fully informed of these facts; and the entire subject, with reference to figures then produced, discussed between the commissioners and the officers of this company and its counsel, and the value of said subways as real estate so fixed by said commissioners for the purposes of taxation, was the amount which they then regarded the subways worth as property, namely, $175,000. * * * That this company has never earned or declared any dividends, and is in default on the interest on its second mortgage bonds, which bonds amount to one million three hundred and eighty-six thousand ($1,386,000) dollars. That the stock of the company has never paid any dividend, and there is no indication that it can for years to come." In determining the property of the corporation liable to taxation, the commissioners added to the cost of the subways the miscellaneous assets, which gave a total of gross assets of

$5,576,775.54. From this total, they deducted the assessed value of real estate and amount invested in stocks of other corporations taxable upon their capital and the debts, which fixed the taxable balance at $939,492.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

John C. Tomlinson, for appellant.

James M. Ward, for respondents.

O'BRIEN, J. The return to the writ shows that the commissioners, in making the assessment, acted upon no other information than that contained in the statements filed by the company. None of the allegations of the petition were denied, and no explanation is given as to how or why the assessment was made, beyond that furnished by the return, which states that "the commissioners, having before them the statement in writing filed by the relator upon such application for a cancellation of the assessment against it for the year 1895, examined into * * * and considered such application and statement, and fixed the amount of such assessment at the sum of $939,942, which they believe to be just." This assessment, therefore, to be sustained, must be warranted by the statements filed by the relator; and the question presented is as to whether, on such statements, the amount fixed could lawfully have been made on the capital of the relator.

In defining the powers and duties of the department of taxes, the court of appeals has established certain principles: (1) The action of the commissioners must be based upon facts and evidence before them, and must not be capricious, arbitrary, or fanciful. (2) The commissioners must return the information and evidence upon which they acted. (3) Where nothing is returned beyond the statements filed by the relator, these statements must be regarded as the basis of their action, and as containing the only facts upon which the assessment was made. (4) Statements which are not denied, or as to which the return is silent, must be regarded as true. The law is equally well settled as to what is the subject of assessment, and in what way the value of a corporation's capital is to be ascertained for the purposes of taxation: (1) The capital stock of every company liable to taxation shall be assessed at its actual value. (2) It is not the value of the capital stock, but the value of the capital, that is to be ascertained. (3) To ascertain the capital subject to taxation requires the valuation of the whole property owned by the corporation, whether real or personal or both; and from the aggregate is to be deducted the assessed value of the real estate, and the balance is the capital subject to assessment, after deducting debts and any exemptions allowed by law. (4) The franchises of the corporation are not part of its taxable capital.

Applying these rules, we are to determine whether the commissioners were justified in fixing the value of the subways, which concededly was all the real estate owned by the relator, at its cost. Although they had assessed the same at a much less sum for purposes of taxation as real estate, they were not concluded, in determining the value of the corporation's capital, by such assessment.

If the value of the real estate was found to be in excess of such assessed valuation, then the latter was to be deducted.   This is clearly expressed in the opinion of the learned judge at special term:

"It is undisputed, however, that such real estate, which is wholly situated within this city, was assessed for purposes of taxation by the respoudents at the sum of $715,000.   If this should be taken as the actual value, it is evident, upon the face of the record, that the relator should not have been assessed at all in respect to its personal property; but it seems to have been held that such assessed value is not conclusive upon the respondents.   They may, notwithstanding such assessment, consider the question as still open when they come to determine the amount which should be assessed for personal taxes, and estimate and determine the value of the real estate to be something very much larger.   While consistency and good administration, to say the least, should forbid such a result, it can no longer be said that the prior assessment of value is conclusive under the decisions of the court of appeals."

Upon the showing made, then, were the commissioners justified in fixing as the value of the subways the amount that they had cost?   Ordinarily, the cost of property would be a safe guide to follow in determining the value; but the exceptional character of this property, its uses, and the company's inability to rent more than 40 per cent. of its subways, the poor returns upon the amount invested, and the present insolvent condition of the company, are considerations which cannot be eliminated in determining the value of these subways as real estate.   It is shown that the relator was subject to the control of the city, both as to where it should build and the extent; and it is further shown that, as the result, 60 per cent. of its subways are unoccupied and represent an actual loss; and that its business has not been profitable appears by the fact that its stock has never paid any dividends, and that it is in default in the interest on its bonds.   Thus, it has neither earned, nor is it earning, any return upon its actual investment.   It would be disregarding all the elements which usually go to make up value to say that such property was worth what it cost.   Considering, therefore, the peculiar character of such property, the cost of construction is not a fair test of its value.   The commissioners, however, disregarding these considerations, have treated these subways, which are in the ground and restricted to a specific use, in the same way as they would the real estate ordinarily owned by a corporation which is unrestricted in its use, and available for all suitable purposes, and with reference to which no injustice could be claimed if assessed at its actual cost.

We think it clearly appears that the action of the commissioners was arbitrary and unjust.   Prior to 1895, the capital of the company, exclusive of its real estate, for the purposes of taxation, had never been valued at over $75,000; and as there was no change in the condition of the company, or in the character or the value of its property, in the year 1895, which would justify an increased assessment, the action of the commissioners in increasing it to $939,941 should be set aside; and the order appealed from, which dismissed the writ, should be accordingly reversed, with costs, and the amount of the capital assessed at the same sum as in the years prior to 1895.   All concur.