(18 App. Div. 17.)

PEOPLE ex rel. TROWBRIDGE v. McNAMARA et al.

(Supreme Court, Appellate Division, Second Department. May 11, 1897.)

1. TAXATION—ASSESSMENT—PROOF OF VALUE.
    Assessors may fix the value of a parcel of real estate according to their own judgment and knowledge, and they are not absolutely controlled by the evidence of the owner, though no other evidence of value is given.

2. APPEAL—INTERLOCUTORY ORDER.
    An order made on the hearing of a writ of certiorari to review an assessment denying an application to reduce the assessment, and directing a reference to take proof as to the value of the property, is of such an interlocutory character as not to be appealable.

Appeal from special term, Queens county.

Certiorari by Cornelia P. Trowbridge against Charles McNamara and others, assessors of Long Island City, to review the action of defendants in assessing certain real property owned by relator. From

an order denying an application for a final order reducing the assessments, relator appeals.  Dismissed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Henry B. Twombly, for appellant.
George W. Stephens, for respondents.

CULLEN, J.  This was a hearing on a certiorari to review an alleged excessive valuation of a piece of real estate owned by the relator.  On grievance day the relator submitted to the assessors an affidavit showing in' detail the valuation of the various pieces of property, stating they were assessed in excess of their value, and also higher, proportionately, than the value of other real property on the same assessment roll.  It also stated that the amount of the assessment was a very great advance over those of previous years. It further detailed special circumstances relative to the property,— that the streets were unopened, that part of it was used for agricultural purposes, etc.  The assessors refused to alter their valuations.  They returned to the writ of certiorari the various proceedings had by the board, including the affidavit submitted by the relator.  They returned no other evidence of value, nor stated any sources of information concerning the subject availed of by them. The affidavit to the assessment roll returned by them is:

"And that, with the exception of those cases in which the value of the said real estate has been changed by reason of proof produced before us, we have estimated the value of the said real estate at the sums which a majority of the assessors have decided to be the full value thereof."

When the proceeding came on for a hearing, the relator applied for an order reducing the amount of the assessment to the value stated in her affidavit.  The court denied this application, and granted an order of reference to take proof as to value.  From that order, and the refusal to grant relator's application, this appeal was taken.

Counsel for the relator insists that she was entitled to judgment on the return.  Her claim is substantially this: The only proof as to the value of the property was that contained in relator's affidavit.  If there was other proof, or the assessors had acquired knowledge in any other manner than by evidence, nothing of the character was returned as the basis of the action of the assessors; and, in the absence of other proof or information, the assessors were concluded by the relator's statement.  The return is not to be commended, as to its form.  It might have been more full, but I think it is not fatally defective, or insufficient to raise an issue.  It shows that the assessors assessed the relator's real estate at what a majority of their number decided to be the full value thereof.  This was the duty imposed on them by the tax law (Laws 1896, c. 908, § 37). The question, then, is whether, as to the valuation of a particular piece of real property, the assessors are to be absolutely controlled by the evidence produced by the property owner, in opposition to their own judgment, or whether their judgment may govern despite the opposing proof.  We think the latter is the true rule, though

there are some special cases where the rule would not apply. In the first instance, unquestionably the assessors are to determine the valuation of the property by the exercise of their judgment and knowledge. Prior to the year 1851, when the owner of the property taxed presented an affidavit to the effect that the real estate owned by him did not exceed in value a certain sum named, the assessors were concluded by the affidavit, and could not assess the property at a greater value than the sum specified. In that year this provision of law was abrogated, and from that time till 1880 the determination of the assessors on the question of value was conclusive. People v. Barker, 48 N. Y. 70. By chapter 269 of the Laws of 1880, it was provided that a writ of certiorari might issue to review an assessment of real or personal property illegal or erroneous by reason of an overvaluation, or a higher proportionate valuation than other real estate on the same roll. By this statute was authorized, for the first time, the taking of testimony upon a return to a writ of certiorari. The provisions of this statute are substantially incorporated in the present tax law (Laws 1896, c. 908). After the enactment of the law of 1880 the determination of the assessors ceased to be conclusive, but was subject to review, and testimony could be taken to show that it was erroneous. People v. Gray, 45 Hun, 243. But the fact that the determination of the assessors became subject to review and to modification by the court did not in any manner affect their powers or duty in originally deciding on valuations. As was said in People v. Barker, supra: "Assessors are citizens chosen from their respective towns, who, in theory of law and in fact, have personal knowledge of the value of real estate in their towns." Even in the case of commissioners appointed to appraise property taken by eminent domain, it is settled by a long line of authorities that they are to act on their own knowledge as well as upon the evidence, and that evidence is to · guide, not control, their judgment. Certainly the same rule should apply to the action of assessors. In one sense the value of a piece of property is a question of fact, but it is a fact that rests almost wholly in opinion or judgment, as to which people differ. While there is no difference in the provision of law relative to the assessment of personal property and that of real property, and both are subject to review by the same proceedings, I think there is a manifest difference in the application of those proceedings to the two different classes of property. In the case of real property the particular piece of land is assessed, and a valuation placed upon it. In the case of personal property the taxpayer is, as a rule, not assessed for a specific article or articles, but for the net value of his personal estate over and above his debts. In the various cases which have been before the courts with reference to the assessment of corporations for personalty, the question has been, not as to the valuation of any tangible, physical object, but as to the existence of property itself subject to taxation. Thus, in People v. Coleman, 126 N. Y. 433, 27 N. E. 818, the question was as to the right to assess the company for its earning power and good will, as distinguished from its tangible property. In People v. Barker, 139 N. Y. 55, 34 N. E. 722, the relator made a detailed statement of its assets and liabilities. The

assessors, in opposition to this sworn statement, and without asserting or claiming that the company had any other property than that returned, which could be pointed out, arbitrarily assumed, because the stock sold in the market at 75 per cent., that the corporation must have property to a far greater amount than that returned. This action was plainly illegal, and the court so held. The value of the stock of the corporation would, of course, largely depend on its earning power, apart from its ownership of property. In this case Judge Peckham says of the action of the assessors:

"This decision, it need scarcely be said, is not to be capricious, arbitrary, or fanciful. It must be based upon some evidence or facts, and should be the result of the exercise of judgment and discrimination. * * * This does not mean that the court is to place itself in the position of an assessor, and review the decisions of those officers upon questions of value or appraisement, where the officers proceeded upon information or evidence tending to support their decision."

Thus, the question in this case was not the value of any particular article, nor was it a question of the valuation of any particular piece of property. The real question was whether the company had the property. The question involved in People v. Barker, 146 N. Y. 304, 40 N. E. 996, was similar in all respects to that presented in the case last cited. The company, because of the profitable franchise possessed to maintain and operate an elevated railroad in the city of New York, had been able to market stock and bonds to an amount greatly in excess of the physical property it owned. The assessors assumed, because it had floated these securities, and they sold in the market at about their nominal value, that the company must have physical property to the same amount, though as matter of fact it had nothing of the kind. Thus, again, the question was as to the existence of property, not as to its valuation. The case of People v. Barker, 7 App. Div. 27, 39 N. Y. Supp. 776, related to property of a very peculiar character. The company had expended money in building a subway, under the direction of the local authorities, which proved of little, if any, value, returning no income whatever. The case is not authority for any general rule on the subject of assessment. We are of opinion, therefore, that where physical and tangible property exists, visible to the assessors, of a character ordinarily dealt in, and whose value is a matter of common knowledge in the community, the assessors may assess that property according to their own judgment, without seeking other proof or sources of knowledge, —subject, of course, to review on certiorari, and to reversal or modification if shown to be erroneous. Such determination should stand until affirmatively proved to be wrong.

This opinion disposes of the case on its merits. But we are of opinion that the order appealed from is of such an interlocutory character as not to be appealable to this division.

The appeal is therefore dismissed, with costs and disbursements. All concur.