(65 App. Div. 224.)

PEOPLE ex rel. ROCHESTER LAMP CO. v. FEITNER et al.

(Supreme Court, Appellate Division, First Department. November 8, 1901.)

1. TAX ASSESSMENT—CERTIORARI—RETURN—CONCLUSIVENESS.

On certiorari to review a tax assessment, the return of the commissioners, denying that an inspection of the books containing the assessment was refused, as alleged in the petition, is conclusive.

2. SAME—OTHER REMEDY.

Greater New York Charter, § 898, requires the board of taxes and assessments to hear all applications by corporations for revision and

72 N.Y.S.—41

cancellation of assessments. Section 895 provides that, where such an application is made, the applicant shall be examined on oath by the commissioner of taxes. *Held*, that where a corporation sent a notice applying for the revision of a personal tax assessed against it, but took no further steps to procure a hearing, and offered no testimony respecting the claim, it had no standing to procure a revision of the assessment on certiorari.

8. SAME—TIME—ERRONEOUS STATEMENT—VALIDITY.
    Where the board of tax commissioners made an assessment, and deposited the books for the inspection of the public, as required by law, an erroneous statement by the secretary as to the time when the assessment would be made up would not invalidate the act.

4. SAME—ORDER OF REFERENCE—APPEAL.
    Where the court is without jurisdiction to award a writ of certiorari to review a tax assessment, for want of the proper preliminary steps, an appeal will lie from an order of reference thereon.

Appeal from special term, New York county.

Certiorari by the people, on the relation of the Rochester Lamp Company, against Thomas L. Feitner and others as commissioners of taxes and assessments in New York City, and another. From an order granting relator's motion for the appointment of a referee, defendants appeal. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

James M. Ward, for appellants.
Oscar Wagner, for respondent.

HATCH, J. The assessment sought to be reviewed in this proceeding was made against the capital and surplus of the respondent, under the provisions of the tax law. The amount was first fixed at $100,000, but on application to the commissioners it was by them reduced to the sum of $25,000. The application filed with the commissioners put the total gross assets, including real estate, at $9,000, and went on to state that the company had no real estate; that the capital stock paid in, or secured to be paid in, was $100,000; and that the indebtedness of the company amounted to $73,589.56. The application was made on the blank form provided for such purpose; and in answer to a request therein contained, to state the actual value of the stock of the company, and to give the facts, under oath, which would justify such estimate of that value, the following statement was made:

"The selling price of the assets of the company in this state and elsewhere would not exceed the sum of $98,000; a considerable portion of the capital stock consisting of patents, designs, etc. The indebtedness of the company is approximately the sum of $73,589.15, and the capital stock of the company was therefore estimated at 25 per cent."

We understand it to be conceded that upon this statement the commissioners were justified in assessing the personal property of the relator at the sum of $25,000, but the relator claims that the statement was and is misleading, and that the commissioners were guilty of error in not granting to it a hearing upon its application thereafter made. It appears in the moving papers that counsel for the relator applied at various times to the commissioners for leave to

examine the books, which it contends were required by law to be kept open, for the purpose of ascertaining how the relator's property had been assessed, fearing that the statement would prove misleading and result in an erroneous assessment, but that such inspection was refused.  On or about the 18th day of April, 1900, the relator filed with the commissioners an application, as provided by Greater New York Charter, § 895, for a revision of the assessment upon the ground that the same was excessive and erroneous.  No notice of this application was taken, except that the secretary of the board stated that the measures taken and papers filed would enable the relator to protect itself by certiorari proceedings.  The relator contends that this application should have been granted, and sued out a writ of certiorari for the purpose of such review, and upon the return of such writ a reference was ordered to take and report to the court the evidence, with findings of fact and conclusions of law as to the several matters in issue.  From such order this appeal is taken.

The return to the writ made by the commissioners traverses the averment of the petition as to the denial of an opportunity to inspect the books, and the return avers in terms that the assessment was fixed, and that notice was given that the books containing the assessment were open for inspection as required by law.  Upon this subject, therefore, the return is conclusive, and must be accepted as true.  People v. Martin, 142 N. Y. 228, 36 N. E. 885, 40 Am. St. Rep. 592;  People v. Lohnas, 54 Hun, 604, 8 N. Y. Supp. 104.  If in fact the averments of the return are untrue in this respect, the relator's remedy is by action for a false return.  People v. Board of Fire Com'rs of City of New York, 73 N. Y. 437.  The petition does not aver that the relator ever appeared before the board of tax commissioners and offered to be sworn, or to present testimony showing that the statement as filed by them was erroneous in any respect, or that the tax which was levied was excessive.  By virtue of the provisions of section 898 of the Greater New York charter, the board of taxes and assessments is required to hear at its main office all applications of corporations for revision and cancellation of assessments.  It is evident, however, that the board is not required to do more than to give notice that the assessment roll has been completed, and that the books are open.  The law imposes the duty upon the corporation assessed to take the initiative in bringing the matter to a hearing before the board of tax commissioners, and, by section 895 of the charter, where an application is made to revise, reduce, or cancel an assessed valuation of personal property, it is required that the applicant shall be examined under oath by a commissioner of taxes.  This evidently contemplates that the person or corporation must present himself, its agents or officers, when the required oath may be administered, and the evidence upon the merits of the application can be taken, and a record of the same preserved.  No such steps were taken in this case.  The relator, it is true, sent a notice, in the form of a letter, bearing date April 18, 1900, making application for a revision of the personal tax assessed against it for the year 1900, upon the ground that the tax assessment as made was excessive;  and with this notice the relator contented itself, and took no

and 106 New York State Reporter

steps to secure a hearing before the board, nor did it offer any testimony whatever concerning the claim, or offer to be sworn in respect thereto. Consequently there was never at any time anything before the board upon which it could act, aside from the report which had been previously furnished by the relator, and it is conceded that their action upon this report justified the tax in the amount of the assessment. They were authorized and required to act, and their conclusion was a judicial determination, and conclusive as to the amount of the tax, in the absence of all other proof. People v. Barker, 23 App. Div. 530, 48 N. Y. Supp. 558, affirmed on appeal in 155 N. Y. 665, 49 N. E. 1102. The relator, having failed to avail itself of the opportunity which the law provides to secure the correction of its assessment, has now no standing to have a review of the same, and had none when this writ was obtained. People v. Feitner, 45 App. Div. 542, 61 N. Y. Supp. 432. In that case the application was for a writ of certiorari to review an assessment on real estate, where the application for revision, when made to the commissioners, must be in writing, stating the ground of objection thereto (Charter of City of New York, § 895), which is different from what is required to correct an assessment of personal tax; but the reasoning of that case with respect to the necessity of taking some steps before the commissioners, and supplementing the same by proof, has precise application to the question now under consideration, and is authoritative upon the subject. It is stated by the petitioner that the secretary of the board informed it that the assessment had not been fixed on the 6th day of April, 1900, and that the tax against the petitioner and other corporations would not be made out until May 1, 1900. The return of the commissioners is conclusive upon this subject. If the board in fact made the assessment and deposited the books for the inspection of the public, as the return says they did, any statement made by the secretary, however erroneous, could not have the effect of invalidating such act. As to the time when it is said that the secretary stated that the assessment would be finally made up, it was correct as a statement of the law, as, in effect, it was saying that on May 1, 1900, the books would be closed, and such is the requirement of the law. As there exists no basis which entitled the relator to review this assessment, there was no jurisdiction to issue the writ.

It is said that the order of reference is not appealable, and reliance is placed upon People v. McNamara, 18 App. Div. 17, 45 N. Y. Supp. 456. In that case all of the preliminary steps had been taken by the relator which entitled him to review the assessment by writ of certiorari; and the court held that under such circumstances an appeal would not lie from the order of reference, for the reason that it was a mere interlocutory order, and that the relator therein was entitled, by virtue of his writ, to contest the correctness of the assessment under it. But where, as in the present case, the writ was issued without jurisdiction, the court was not vested with any authority to proceed thereunder in any form; but, determining that it had, an appeal lies from the determination, no matter in what form it is expressed.

It follows that the order appealed from should be reversed, with $10 costs and disbursements, and motion denied with $10 costs, and the writ dismissed, with $50 costs. All concur.

<hr>

(36 Misc. Rep. 96.)

### In re LAWSON et al.

(Surrogate's Court, Washington County.   October, 1901.)

**1. EXECUTORS—VOLUNTARY ACCOUNTING.**

**2. SAME.**

A petition by executors for the judicial settlement of their accounts stated that the only person interested in the estate is the sole residuary legatee named in the will, who is also an executor. The petition also named four legatees aside from the residuary legatee and four heirs at law. No waivers by any of these legatees, next of kin, or heirs at law of the issue and service of citation were filed, and one year has not elapsed since the issue of letters of administration. *Held*, that the petition will be denied.