(Supreme Court, Special Term, New York County. June, 1902.)

**1.** RAILROADS—TAXATION—EVIDENCE OF VALUE.

In determining the actual value of the taxable property of a leased railroad for purposes of assessment on its capital stock under Tax Law, § 12, where all the tangible property is within the jurisdiction of the commissioners, and assessed by them, they may base their finding on the rental paid by the lessee.

**2.** SAME—LEASED ROAD.

Where lessee had a franchise to operate a railroad in the state of New York, the court will not assume that the rent under the lease of the road included the value of the lessee's franchise for purposes of taxation.

**3.** CERTIORARI—RETURN.

The allegations of a return to a writ of certiorari to review an assessment must, for the purposes thereof, be taken as true.

Certiorari by the people, on the relation of the New York Central & Hudson River Railroad Company and the Spuyten Duyvil & Port Morris Railroad Company, against Thomas L. Feitner and others, commissioners of taxes and assessments of the city of New York, to review an assessment on the capital stock of the latter railroad company. Writ dismissed.

Ira A. Place, for relators.

George L. Rives, Corp. Counsel (David Rumsey, of counsel), for respondents.

STECKLER, J. In this proceeding the relators seek to review an assessment upon the capital stock of the relator the Spuyten Duyvil & Port Morris Railroad Company for the year 1901. The said railroad company is a domestic corporation, and on the second Monday of January, 1901, its entire property consisted of a strip of railroad, together with the superstructure of railroad tracks and ties, along the northerly side of the Harlem river, and certain buildings suitable for the operation of the road. The company had no surplus. The property is in the city of New York, within the jurisdiction of the defendants for taxation purposes. It is used, under a lease, to connect two sections of the lines of the New York Central & Hudson River Railroad, enabling that company to run its trains into the borough of Manhattan; and its assessed value for 1901 was $1,121,600.

In making an assessment required by the statute upon capital stock (Tax Law, § 12) the proper method to pursue is to first value all the assets of every kind, including real and personal property, of the corporation, and then to make the necessary deductions, including a deduction of the assessed, as distinguished from the actual, value of the real property. In the case of corporations it may happen that an undervaluation in the assessment of the real estate as such will be corrected in its valuation as part of the capital, and so the undervaluation may be remedied, and the whole property be subjected to taxation at its real value. People v. Barker, 144 N. Y.

94, 39 N. E. 13; People v. Barker, 31 App. Div. 315, 51 N. Y. Supp. 1102, 53 N. Y. Supp. 1111, affirmed in 158 N. Y. 709, 53 N. E. 1130, and in 179 U. S. 279, 21 Sup. Ct. 124, 45 L. Ed. 194. The claim of the relators is that the relator the Spuyten Duyvil & Port Morris Railroad Company has no personal property of any kind, or surplus profits or reserve funds, but only the real property constituting its railroad; that all the proceeds of its capital stock are invested in said real property; and that the actual value of the realty is $989,000. In their return to the writ the defendants state that the railroad was so situated as to necessitate a different method of valuation from that adopted in the case of an ordinary steam railroad only partly within the tax district; that neither the use nor the situation of the railroad was that of an ordinary steam railroad, and that neither the cost of its construction nor reproduction would show its actual market value; that its value,—$989,000,—as stated in the application for the writ, appeared to be measured by the cost of the road more than 30 years ago; that under the lease to the New York Central & Hudson River Railroad Company the lessee undertook to pay and paid an annual rental for the use of the property amounting to 8 per cent. of the par capital of the lessor, $989,000, besides all taxes and repairs, and that it thus appeared that the earning power of the railroad amounted to 8 per cent. net annually upon the original cost; that, taking this earning power into consideration, the market value of the capital stock on the second Monday of January, 1901, was $1,483,500; and, deducting from this sum the assessed value of all the corporation's real estate, viz., $1,121,600, the amount for which the company's capital stock was taxable for 1901 was $361,900.

In a case of this kind the court is not to place itself in the position of an assessor, and review his decision upon questions of value or appraisement, where the officer proceeded upon information or evidence tending to support his decision. The court generally will not look into questions of fact as to the amount or value of the personal estate of a corporation or individual. These matters are for the judgment of the assessors, and their decisions will ordinarily be sustained. People v. Barker, 139 N. Y. 55, 60, 34 N. E. 722. The question to be decided, therefore, is whether the defendants adopted a proper method in determining the actual value of the lessor's real property. It is contended that the method adopted by defendants violates the rule laid down by the court of appeals in People v. Clapp, 152 N. Y. 490, 46 N. E. 842, 39 L. R. A. 237. In that case, wherein a question of local taxation of real estate, not taxation of its capital stock, was involved, the assessors based their valuation upon the income or earning power of an entire system of railroads of which the portion of relator's railroad within their jurisdiction formed a part; and the court held that such basis was erroneous, and that the cost to procure the land, construct the roadbed, put down the ties and rails, and erect the buildings and other structures, all new, was a just and reasonable rule of valuation. In this proceeding all the tangible property of the Spuyten Duyvil & Port Morris Railroad was within the defendants' jurisdiction, and assessed

by them, and its earning power or the rental paid for the property by the lessee was considered merely for the purpose of determining its actual value. In determining the "actual value" of the property (Tax Law, § 12),—that is, "the sum for which said property under ordinary circumstances would sell" (Greater N. Y. Charter, § 889; People v. Barker, 144 N. Y. 94, 39 N. E. 17),—it seems to have been proper, not capricious, arbitrary, or fanciful, for the defendants to base their finding of value upon the rental paid by the lessee, because the rent of property is evidence of the amount for which it will sell. Atlantic & St. L. R. Co. v. State, 60 N. H. 133; People v. Kalbfleisch, 25 App. Div. 432, 49 N. Y. Supp. 546.

The relators further claim that in fixing the amount of rental not only the tangible property of the Spuyten Duyvil Company, but its franchises, were taken into consideration by the parties to the lease. But the petition and return show that it was the real estate, not the franchises, of the lessor, that was leased. The petition avers "that on the said second Monday of January, 1901, the total gross assets of every kind and character owned and held by said the Spuyten Duyvil & Port Morris Railroad Company were real estate of the actual value of $989,000," and the return states that the property assessed was the real property rented. The statement must be taken as true. People v. Feitner, 65 App. Div. 224, 72 N. Y. Supp. 641. Moreover, the Spuyten Duyvil Company is still a corporation, and still has its franchise. The statute (Laws 1839, c. 218) authorizes any railroad corporation to contract with any other railroad corporation for the use of their respective roads. See Railroad Law, § 78. The lessee, with its franchise to operate a railroad in the state of New York, had ample power to operate any property which it might acquire therein as a railroad, and to justify such operation it was only necessary to acquire the tangible property upon which the railroad should be operated. So that it was unnecessary for the lessee to acquire the lessor's franchise to operate its road, and the lessor's contention that its franchise was leased, or was an element in the stipulated rental, is not sustainable. See, also, opinion, Earl, Referee, Special Franchise Tax Cases, p. 44, Pamphlet.

Upon the whole case the relators have failed to show that they are aggrieved by the assessment, and the writ must therefore be dismissed, with costs. Writ dismissed, with costs.